**PALMER & SICARD, INC.**

v.

**The UNITED STATES.**

**No. 255–83C.**

United States Claims Court.

Sept. 5, 1984.

fore as a charitable deduction $11,330. This appears to be in error inasmuch as 5% of $225,608 is $11,280 (*i.e.,* $50 error).

Alvin S. Nathanson, Boston, Mass., for plaintiff.

Michael T. Paul, Washington, Mass., with whom were Asst. Attys. Gen. J. Paul McGrath, David M. Cohen, and Sandra P. Spooner, Washington, D.C., for defendant; William Manley, General Services Administration, Boston, Mass., of counsel.

## OPINION

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This case, which was instituted by the plaintiff under the Contract Disputes Act (41 U.S.C. §§ 601–613 (1982)) ("the Act"), is before the court on the defendant's motion entitled "Defendant's Motion to Dismiss for Lack of Jurisdiction," the plaintiff's response to the motion, and the defendant's reply. Counsel for the parties have supplemented their written submissions by presenting oral arguments to the court.

As the parties, in their submissions relative to the pending motion, have brought to the court's attention factual information not previously set out in the complaint, it is necessary to treat the defendant's motion as a motion for summary judgment.

There does not appear to be any controversy between the parties, however, con-

cerning the relevant facts of the case, so consideration by the court of the legal questions raised in the motion is appropriate. In this connection, the allowance of a motion for summary judgment is appropriate, under this court's Rule 56(c), only in a situation where the agreed facts show that the moving party is entitled to a judgment as a matter of law.

The contract involved in this case was dated August 31, 1979. It was entered into between the plaintiff and the United States (acting through a contracting officer of the Public Buildings Service, General Services Administration ("GSA")), and it provided for the performance by the plaintiff of certain construction work at the U.S. Border Control Sector Headquarters, Houlton, Maine. The contract required that the work be completed within 130 calendar days after the plaintiff received a notice to proceed. The notice to proceed was received by the plaintiff on September 24, 1979; and the work was substantially completed on December 31, 1980.

The crucial question to be decided by the court in acting on the pending motion for summary judgment is whether, as required by the Act, the plaintiff filed its claims in writing with the contracting officer before instituting the present action.

The Act requires that all claims by a contractor against the Government relating to a contract *"shall be in writing* and *shall* be submitted to the contracting officer for a decision"* (section 605(a)); that on a claim for $50,000 or less (the total of the several claims involved in this case is less than $50,000), the contracting officer shall issue a decision within 60 days "from his receipt of a written request from the contractor that a written decision be rendered within that period," and, in any event, that the contracting officer shall render his decision *"on submitted claims * * * within a rea-sonable time, * * * taking into account such factors as the size and complexity of the *claim* and the adequacy of the information in support of the *claim* provided by the contractor"* (section 605(c)(1), (3)); and that the contractor, after receiving the con-tracting officer's decision, may appeal to the appropriate agency board of contract appeals within 90 days after receiving the contracting officer's decision (sections 606–08), or, in lieu of taking an administrative appeal, that the contractor may "bring an action directly on the *claim"* in this court within 12 months from the date of the receipt by the contractor of the contracting officer's decision (section 609) [emphasis supplied].

Section 601 of the Act sets out defini-tions for a number of terms that are used in the Act, but it does not define the term "claim."

The "Disputes Clause" of the contract, however, does define the term "claim" in the following language:

(a) This contract is subject to the Con-tract Disputes Act of 1978 * * *. If a dispute arises relating ·to the contract, the contractor may submit a claim to the Contracting Officer who shall issue a written decision on the dispute * * *.

(b) "Claim" means:

(1) A written request submitted to the Contracting Officer;

(2) For payment of money, adjustment of contract terms, or other relief;

(3) Which is in dispute or remains un-resolved after a reasonable time for its review and disposition by the Govern-ment; and

(4) For which a Contracting Officer's decision is demanded.

■ Thus, the filing of a "claim" by a government contractor with the contract-ing officer is the essential first step in the chain of events which may ultimately vest in the contractor the right to bring an action in this court (or to file an appeal with the agency board of contract appeals) for relief in the event that the claim is rejected in whole or in part by the contract-ing officer. Unless this essential first step is taken by a contractor, this court lacks jurisdiction to consider the merits of any claim which the contractor may seek to bring before it. *See Paragon Energy*

*Corp. v. United States,* 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981).

The complaint in this case, as amended, seeks to assert nine claims against the Government. These claims will be considered in the light of the jurisdictional requirement previously outlined in the opinion, *i.e.,* that a government contractor must first file a "claim" with the contracting officer.

### Modification Request No. 1

On September 20, 1979, while work under the contract was in progress, the GSA issued to the plaintiff what was referred to as Modification Request No. 1. This was, in effect, a change order, which made five changes in the contract requirements. These changes involved moving a roof drain, removing certain garage lights, relocating a ground rod, revising an instruction concerning electrical equipment, and raising a cold water line. In the document, the plaintiff was asked to submit, not later than October 8, 1979, a proposal in connection with the performance of the work stated in the modification. The plaintiff did not submit anything to the GSA by the October 8 deadline.

In a letter to the plaintiff dated May 28, 1980—the GSA in the meantime having issued other change orders relative to the contract and having asked the plaintiff for proposals in connection with such change orders—the GSA made a general request to the plaintiff that it submit all overdue change order proposals.

As of December 7, 1981, the plaintiff had never submitted any proposal in connection with the work done pursuant to Modification Request No. 1. Consequently, in a letter to the plaintiff dated December 7, 1981, the plaintiff was requested again to submit a proposal relative to the work done pursuant to Modification Request No. 1, and the proposal was to be submitted within 10 days after the date of the receipt of this letter. The letter was received by the plaintiff on December 11, 1981. There was no response from the plaintiff to this letter.

Despite the communications from the GSA asking the plaintiff to submit a proposal with respect to the work done by the plaintiff pursuant to Modification Request No. 1, the plaintiff did not, at any time, submit to the contracting officer anything that could reasonably be construed as a written request for the payment of money for the extra work involved in complying with Modification Request No. 1.

On April 20, 1982, the contracting officer issued to the plaintiff what was referred to as a "unilateral determination," allowing the plaintiff $2,713 for the extra work performed by the plaintiff in complying with Modification Request No. 1. This document stated in part as follows:

> In accordance with paragraph 3, entitled "Changes," of the General Provisions of the above-mentioned contract and in accordance with paragraph 23, entitled "Equitable Adjustments," of the Modification of General Conditions of the above-mentioned contract, a unilateral determination is hereby issued for settlement on those items of work delineated in unilateral Modification Request No. 1 in the amount of $2,713. This course of action is necessary due to your failure to submit a proposal for the work within the time period stipulated for Modification Request No. 1. This action also enables GSA to pay you for the work performed.

> \*      \*      \*      \*      \*      \*

> Under the Contract Disputes Act of 1978, and in accordance with the Disputes Clause of the Modifications of General Provisions, the Contracting Officer's decision is final and conclusive and not subject to review by any forum, tribunal, or Government agency unless an appeal or suit is timely commenced as described below.

The contracting officer then explained to the plaintiff what its rights were with respect to taking an appeal from the decision of the contracting officer to the GSA Board of Contract Appeals or with respect to the commencement of an action in this court's

predecessor, the United States Court of Claims.

■ The preceding summary of the facts relative to Modification Request No. 1 shows that, as of the time when the contracting officer issued his unilateral determination concerning the amount due the plaintiff for the work done in accomplishing these particular changes, the plaintiff had not submitted to the contracting officer any claim for reimbursement in connection with the work done pursuant to Modification Request No. 1. For that reason, the court does not have jurisdiction to consider the merits of the plaintiff's claim asserted in the complaint for reimbursement of its costs incurred in performing this extra work.

It should be mentioned here that in a letter to the GSA dated April 30, 1980, the plaintiff did mention Modification Request No. 1. That letter, however, was a request for an extension of the time prescribed for the completion of the work under the contract, and it did not refer to any additional monetary payment as being requested by the plaintiff.

■ The circumstance that the contracting officer, despite the lack of a claim for reimbursement by the plaintiff, unilaterally determined that the plaintiff was entitled to $2,713 for the extra work done in complying with Modification Request No. 1 is immaterial, insofar as the jurisdiction of this court is concerned. The contracting officer did not have any authority to waive the statutory requirement that a government contractor who desires reimbursement under the contract *must* file a claim with the contracting officer. *Cf. Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982); *Skelly and Loy, v. United States,* 231 Ct.Cl. 370, 372–73, 685 F.2d 414, 416 (1982).

### Modification Request No. 2

Modification Request No. 2 was issued by the GSA to the plaintiff on February 4, 1980. It involved changes in the construction work at a pistol range, in the insulation requirements, in the installation of styrofoam at a certain location, and in the height of a concrete foundation.

In a communication dated February 14, 1980, the GSA asked the plaintiff to submit a detailed proposal for this extra work before February 28, 1980. There was no response from the plaintiff to this communication.

The plaintiff having failed to submit a detailed proposal in connection with the extra work required by Modification Request No. 2, the GSA, in a letter to the plaintiff dated December 7, 1981, again asked that the plaintiff submit a proposal with respect to Modification Request No. 2 within 10 days after the letter was received. The 10-day period ended on December 21, 1981, without any response from the plaintiff to it.

The plaintiff did not, at any time, submit to the contracting officer any written communication that could reasonably be construed as a request for the payment of money in connection with the extra work required by Modification Request No. 2.

On April 20, 1982, the contracting officer issued a "unilateral determination," stating that the plaintiff was entitled to an additional sum in the amount of $2,503 for the extra work performed in complying with Modification Request No. 2. This determination used language virtually identical with that previously quoted from the contracting officer's unilateral determination with respect to Modification Request No. 1, except for the amount of the award and the number of the modification request involved in the determination.

As the plaintiff did not submit to the contracting officer any request for reimbursement of the costs incurred in performing the extra work required by Modification Request No. 2, the court lacks jurisdiction to consider the claim asserted in the complaint concerning such work.

The contracting officer's unilateral determination, making an award to the plaintiff for this extra work, could not confer jurisdiction on the court.

### Modification Request No. 3

Modification Request No. 3 was issued by the GSA to the plaintiff on October 10, 1980. It required the installation of an exhaust fan at a certain location and the installation of two lightning rods.

The receipt of this directive was acknowledged by the plaintiff in a letter addressed to the GSA, attention of the contracting officer, on October 15, 1980. This letter stated in part as follows:

> Your directive is above and beyond contract requirements and will involve additional costs and time. As soon as we have received a quotation from our subcontractor we will submit a quotation and request for time extention [sic].

No quotation having been received from the plaintiff in accordance with its promise of October 15, 1980, the GSA, in a letter to the plaintiff dated December 15, 1980, asked the plaintiff to submit, not later than December 29, 1980, a proposal in connection with the work performed under Modification Request No. 3. No response to this letter was received from the plaintiff.

Subsequently, in a letter dated December 7, 1981, the GSA again asked the plaintiff to submit a proposal with respect to Modification Request No. 3, and to do so within 10 days after the receipt of the letter. The letter was received by the plaintiff on December 11, 1981, but the plaintiff did not respond to it.

The plaintiff did not, at any time, furnish to the contracting officer a specific request for a money payment relative to, or any statement of the costs which the plaintiff incurred in performing, the extra work required by Modification Request No. 3 (as the plaintiff promised to do in its letter of October 15, 1980, and as the GSA asked the plaintiff to do on subsequent occasions).

On April 20, 1982, the contracting officer issued a "unilateral determination," holding that the plaintiff was entitled to an additional sum in the amount of $1,282 for the extra work performed in complying with Modification Request No. 3.

The facts with respect to Modification Request No. 3 are distinguishable in one respect from those previously outlined in connection with Modification Requests Nos. 1 and 2. Here, the plaintiff did inform the contracting officer, in its letter of October 15, 1980, that this directive would "involve additional costs," and that the plaintiff would "submit a quotation" with respect to the extra costs as soon as the plaintiff received a quotation from its subcontractor. The plaintiff, however, never submitted the promised quotation; and the question arises as to whether the language used by the plaintiff in its letter of October 15, 1980, can properly be characterized as a "claim" for reimbursement of such costs as might be incurred in complying with Modification Request No. 3.

■ The plaintiff's letter of October 15, 1980, was certainly sufficient to put the contracting officer on notice that the plaintiff expected to be reimbursed for the costs that it would incur in performing the extra work; and it was, to that extent, a written request for the ultimate payment of money to reimburse the plaintiff for its costs. For that reason, and in order that the plaintiff may receive compensation for extra work which it performed pursuant to a lawful directive, it is the court's view that the plaintiff's letter of October 15, 1980, can reasonably—and should properly—be construed as a claim in writing for reimbursement with respect to the extra costs incurred in performing the work required by Modification Request No. 3.

This is not to say that the court condones the plaintiff's failure to comply with the GSA's repeated requests for a statement of the plaintiff's costs incurred in the performance of this extra work. The court is concerned here with a question of jurisdiction, and not with the question of whether the plaintiff's conduct was business-like.

The plaintiff having submitted a claim, and the contracting officer having issued a final decision on the claim, the court has jurisdiction to consider the merits of this particular claim asserted in the complaint.

*Modification Requests Nos. 4 and 5*

Each of these modification requests involved the performance of extra work by the plaintiff pursuant to a directive from the GSA; two or more communications from the GSA asking the plaintiff to submit a proposal in connection with such extra work; a failure by the plaintiff to submit to the contracting officer anything that could be reasonably regarded as a request for the payment of money on the basis of such extra work; and issuance by the contracting officer of a "unilateral determination," awarding to the plaintiff a specified sum of money as reimbursement for the extra work.

As the plaintiff never submitted to the contracting officer anything in writing that could reasonably be regarded as a request for the payment of money because of the extra work performed in complying with either of these directives, the court does not have jurisdiction to consider the claims asserted in the complaint on the basis of such extra work.

The reason for this conclusion is similar to that outlined in disposing of the claim relative to Modification Request No. 1.

*Modification Request No. 6*

After it was discovered, during an inspection of the interior painting required by the contract, that "flashing" was occurring at certain places, the GSA wrote a letter to the plaintiff under the date of October 28, 1981, directing the plaintiff to apply a second coat of paint in those areas where flashing was occurring.

The plaintiff responded in a letter dated November 9, 1981, to the GSA, attention of the Chief, Operations Branch. The concluding paragraph of this letter stated as follows:

> We believe the directive to place two coats of paint constitutes a directive to do work above and beyond contract requirements for which we herewith file claim. This claim will involve additional cost and time.

The GSA accepted the plaintiff's position that the directive for the application of a second coat of paint was outside the requirements of the contract. Accordingly, the GSA then issued Modification Request No. 6, which was, in effect, a change order with respect to the application of the additional paint. Modification Request No. 6 was dated February 24, 1982; and, in the document, the GSA asked the plaintiff to submit, not later than March 10, 1982, a price proposal, with an itemized breakdown, relative to the application of the second coat of paint. The plaintiff did not comply with the request for a price proposal.

Again, in a letter which was dated April 28, 1982, and was received by the plaintiff on May 5, 1982, the GSA asked that the plaintiff submit, within 10 days after the receipt of the letter, a proposal in connection with Modification Request No. 6. The plaintiff did not submit such a proposal.

The plaintiff having failed to submit to the GSA a proposal relative to the cost of the work performed under Modification Request No. 6, the contracting officer issued on July 23, 1982, a "unilateral determination" to the effect that the plaintiff was entitled to additional compensation in the amount of $1,697 for the extra work performed pursuant to Modification Request No. 6. This document used language that was virtually identical with that previously quoted from the contracting officer's determination relative to Modification Request No. 1, except for the amount of the award and the number of the modification.

Although the plaintiff never complied with the requests from the GSA for the submission of a specific proposal setting out the additional amount claimed by the plaintiff for performing the extra work under Modification Request No. 6, the court regards the plaintiff's letter of November 9, 1981, to the effect that the directive with respect to the additional coat of paint required the plaintiff "to do work above and beyond contract requirements for which we herewith file claim," and that the claim would involve "additional cost," was ade-

quate to inform the contracting officer that the plaintiff desired and expected additional reimbursement for the cost that would be incurred in performing such work.

It should be mentioned here that although the plaintiff's letter of November 9, 1981, was addressed to the attention of a GSA official other than the contracting officer, it was referred to the contracting officer and was mentioned by the latter in his unilateral determination concerning the application of the additional paint.

The contracting officer's determination of July 23, 1982, that the plaintiff was entitled to the additional sum of $1,697 for the performance of the extra work was the contractor's final decision on the claim.

██ The plaintiff having filed a claim for this work, and the contracting officer having rendered a final decision on the claim, it necessarily follows that the court has jurisdiction to consider the merits of this particular claim asserted in the complaint.

### Modification Request No. 7

During the performance of the work under the contract, a controversy arose between the GSA and the plaintiff with respect to the requirements indicated on a certain drawing concerning the number of control wires at a disconnect switch. A letter dated January 21, 1981, from the GSA to the plaintiff directed that the plaintiff install two additional control wires. The plaintiff replied by means of a letter dated January 28, 1981, and stated that the contract drawing in question merely indicated two wires and that if anything more than the two wires was required, the plaintiff would consider the requirement "to be a change."

The plaintiff again referred to this controversy in a letter to the GSA dated February 20, 1981, and concluded with a sentence stating that "clearly an error on contract drawing exists for which we believe we are entitled to recover all costs."

On the basis of the plaintiff's representations, the GSA changed its position and agreed with the plaintiff that the particular contract drawing only required two wires. The letter then asked the plaintiff to submit its claim for the cost of the additional wiring desired by the GSA. The plaintiff did not respond to this request.

On May 17, 1982, the GSA issued Modification Request No. 7. This was, in effect, a change order retroactively requiring the plaintiff to install the two additional control wires desired by the GSA. The document stated that the plaintiff should submit its proposal, with an itemized breakdown, for the work required in the installation of the two additional control wires, and that the proposal should be submitted not later than May 31, 1982. No proposal was submitted by the plaintiff in response to this request.

In a follow-up letter from the GSA dated July 9, 1982, and received by the plaintiff on July 14, 1982, the plaintiff was again requested to submit, within 10 days after the letter was received, a proposal with respect to the work required by Modification Request No. 7. The plaintiff did not submit any proposal pursuant to this communication.

On August 25, 1982, the contracting officer issued a "unilateral determination" holding that the plaintiff was entitled to additional compensation in the amount of $218 for the additional work involved in Modification Request No. 7.

The plaintiff's letters of January 28 and February 20, 1981, were referred to the contracting officer and were mentioned in the unilateral determination.

██ It is the view of the court that the general statements in the plaintiff's letters dated January 28 and February 20, 1981, to the effect that the plaintiff considered the requirement for the installation of two additional control wires "to be a change," for which the plaintiff believed it was "entitled to recover all costs," were sufficient to constitute a claim under the Contract Disputes Act.

The plaintiff having submitted a claim for monetary compensation, and the contracting officer having rendered a final decision on the claim, the court concludes that

it has jurisdiction to consider the merits of this particular claim as asserted in the complaint.

## Modification Request No. 8

In a letter to the plaintiff dated April 15, 1982, the GSA set out a list of eight items which allegedly had not been completed in accordance with the requirements of the contract. The plaintiff was requested to complete these items within 30 days, at no cost to the Government. The plaintiff did not respond to this letter.

A subsequent inspection was conducted by GSA engineers, and they concluded that only item No. 8 had been completed in accordance with the contract requirements.

On December 1, 1982, the GSA issued Modification Request No. 8 to delete items 1 through 7 from the contract. The document requested the plaintiff to submit, a price proposal relative to the elimination of this work.

The plaintiff on December 13, 1982, wrote a letter to the GSA, attention of the contracting officer, discussing items 1 through 7, contending that they were "punch list items," and asserting that the previous acceptance of the project by the GSA was final and conclusive except as regards latent defects. The letter also stated, "We herewith file claim for all costs incurred in investigating this matter."

No proposal having been received from the plaintiff relative to the deletion of items 1 through 7 from the contract, the contracting officer on April 13, 1983, issued a unilateral determination to the effect that the Government was entitled to a credit in the amount of $534 because of the deletion of these items.

Although the plaintiff contended in its letter of December 13, 1982, that there was no proper basis for the deletion of items 1 through 7, particularly after the acceptance of the project by the GSA, nothing in the letter could reasonably be construed as a request by the plaintiff that it be reimbursed for the work purportedly done in connection with these items. Moreover, af-

ter the issuance of the contracting officer's unilateral determination that the Government was entitled to a credit of $534 on account of the deletion of these items, the plaintiff did not subsequently submit to the contracting officer any request for the refund of the $534 thus withheld from the contract price.

Consequently, as the plaintiff did not file a claim with the contracting officer, the court lacks jurisdiction to consider the claim asserted by the plaintiff in the complaint for a refund of the $534 deducted from the contract price. The contracting officer's unilateral determination could not confer jurisdiction on the court.

It should be noted that the plaintiff's letter of December 13, 1982, did assert a "claim for all costs incurred in investigating this matter," but there is no reference in the complaint to such costs.

## Liquidated Damages

In letters from the plaintiff to the GSA dated April 30, 1980, June 24, 1980, August 5, 1980, September 15, 1980, and October 15, 1980, the plaintiff expressed the view that changes and conditions which had been encountered during the performance of the contract entitled the plaintiff to extensions of the time for the completion of the work under the contract.

These letters were referred to the contracting officer and were mentioned in a letter which he addressed to the plaintiff under the date of April 28, 1983. The contracting officer's letter then stated in part as follows:

> Since Palmer and Sicard, Inc. has failed to substantiate its requests for time extensions in accordance with the Instructions To Bidders, GSA Form 1015, and the General Conditions GSA, Form 1139, and since the Government does not feel that any time extensions are due you under the contract, Palmer and Sicard must pay the Government liquidated damages in the amount of $10,020 for the calendar days of delay in completing the work beyond the 2/1/80 date fixed for completion. Liquidated damages are

hereby assessed at the rate of $30 per calendar day for the 334 days which lapsed between the scheduled completion date of 2/1/80 and the substantial completion date of 12/31/80.

This decision of the Contracting Officer is made in accordance with the Disputes Clause and shall be final and conclusive as provided therein, unless appealed to the Board of Contract Appeals, or at your option, brought in the U.S. Court of Claims. * * *

In conclusion, the letter from the contracting officer gave the plaintiff information concerning the procedure to be followed in obtaining a review of the contracting officer's decision by taking an appeal to the appropriate board of contract appeals or by filing an action in court.

The contracting officer recognized that the plaintiff had previously submitted requests for relief, under the provisions of the contract, in the form of time extensions which would obviate or at least reduce the plaintiff's obligation to pay liquidated damages for the delay in the performance of the work under the contract. The contracting officer then proceeded to deny such requests on the ground that they had not been substantiated by adequate proof that the delay was attributable to changes and conditions encountered during the performance of the work.

The contracting officer's determination that the requests for time extensions were not adequately supported by the necessary proof cannot be determinative of the question as to whether this court has jurisdiction to consider the plaintiff's claim in the complaint that it was entitled to time extensions, and, therefore, was entitled to recover some or all of the liquidated damages assessed against the plaintiff.

The jurisdictional requirements of (1) the filing by the contractor with the contracting officer of requests for relief in the form of time extensions, and (2) a final decision by the contracting officer denying such requests and assessing liquidated damages for delay, having been met, the court has jurisdiction to consider the merits of the claim asserted in the complaint with respect to this matter.

### Conclusion

It necessarily follows from the previous discussion that the defendant is not entitled to a dismissal of the complaint on the ground that the court lacks jurisdiction to consider *any* of the several claims asserted in the complaint.

Subsequent proceedings will be restricted, of course, to the claims over which the court has jurisdiction.

The defendant's motion for summary judgment is denied.

IT IS SO ORDERED.