**ARLINGTON ALLIANCE, LTD.,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 122–81L.**

United States Court of Claims.

Aug. 11, 1982.

Harvey S. Kronfeld, Philadelphia, Pa., attorney of record for plaintiff.

Janice Siegel, Washington, D. C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D. C., for defendant.

Before SKELTON, Senior Judge, and NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

SKELTON, Senior Judge:

In this case the plaintiff, Arlington Alliance, Ltd., (Arlington or plaintiff) has filed suit against the United States (defendant or the government) under 28 U.S.C. § 1491 for damages in excess of $50,000, together with interest and attorneys' fees, for alleged breaches of three lease contracts, described below, by the General Services Administration (GSA). The government has filed a motion for summary judgment in which it contends that we lack jurisdiction of the case because the plaintiff has an adequate remedy under the contracts, but has failed to exhaust its administrative remedies under the disputes clause of the leases as required by law. The government denies that the GSA breached the contracts, which, if true, deprives us of jurisdiction under 28 U.S.C. 1491.

The government also says in the alternative that if the Contract Disputes Act, 41 U.S.C. 601 *et seq.* (the Act) applies to plaintiff's claims in Count I of its petition, we lack jurisdiction of the claims because the plaintiff failed to certify to the claims as required by 41 U.S.C. 605(c)(1) (quoted below) and otherwise failed to comply with the Act when it filed its claims with the contracting officer. It appears that the law and the facts are with the government and we decide the case in its favor.

The facts are generally as follows.

Arlington is a limited partnership which owns two high-rise office buildings in Arlington, Virginia, known as the James Polk Building and the Zachary Taylor Building. On or about January 15, 1970, the General Services Administration (GSA), as lessee, entered into a written lease of certain premises in the James Polk Building (Polk premises) with the James Polk Corporation, which lease was drafted and prepared by the government.

On or about February 17, 1970, GSA, as lessee, entered into a written lease of certain premises in the Taylor building (Taylor

Units 1 and 2) with the Zachary Taylor Corporation. By lease supplement on September 27, 1976, additional premises in the building (Taylor Unit 3) were leased to GSA. This lease was also drafted and prepared by the government.

The Polk and Taylor buildings were conveyed to Arlington on February 7, 1974, and Arlington thereby succeeded to all the rights and remedies of the lessors.

Each lease provides that rent adjustments are to be made periodically to provide for increases or decreases in general real estate taxes and specified operating costs, commencing on or by the following dates:

| Leased Premises | Rent Escalation Date |
|---|---|
| Taylor Unit 3 | September 27, 1979 |
| Polk Premises | July 8, 1980 |
| Taylor Units 1 And 2 | September 20, 1980 |

Each lease contains a Tax Escalation clause providing a specified formula for the calculation of the escalated rent to be paid on account of increases in general real estate taxes and an Operating Cost Escalation clause providing that 90 days before the date for rent escalation, Arlington would provide the government with statements of Arlington's past and projected operating costs (rent escalation proposal) for purposes of negotiating the rent escalation due under each lease, and that, after negotiation, the government would pay to Arlington the agreed amount of such negotiated escalated rent, if any, by the date provided for rent escalation, or, if the parties failed to reach an agreement, the government would provide the services in the leased premises for itself within 90 days thereafter.

Pursuant to these provisions, Arlington provided the GSA contracting officer with rent escalation proposals and supporting data in writing as follows:

| Leased Premises | Rent Escalation Proposal Submission Date | Rent Escalation Date |
|---|---|---|
| Taylor Unit 3 | June 27, 1979 | September 27, 1979 |
| Polk Premises | April 7, 1980 | July 8, 1980 |
| Taylor Units 1 & 2 | June 19, 1980 | September 20, 1980 |

In such data, Arlington claimed that the amount of escalated rent due under the Polk lease should be calculated on the basis of $119,747.22 for operating costs rent escalation ($4.095 per square foot per year) and $3,129.68 for general real estate taxes rent escalation ($.107 per square foot per year over 280,880 square feet).

Arlington claimed that the amount of escalated rent due under the Taylor lease should be calculated on the basis of $35,369.65 for operating costs rent escalation ($1.173 per square foot per year, for September 27, 1976, lease supplement only, over 34,074 square feet) and −$689.59 for general real estate taxes rent escalation (−$.023 per square foot per year, for September 26, 1976, lease supplement only) (the yearly rent escalation for the remainder of the Taylor lease would be $3.91 per square foot, comprised of $3,689 for operating costs and $.221 for taxes over 354,550 square feet).

Arlington did not certify that the claims were made in good faith, that the supporting data was accurate and complete to the best of its knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which it believes the government is liable. Such a certification is required by 41 U.S.C. § 605(c)(1) where the claim amounts to more than $50,000, which is the case here.[1]

After the plaintiff had filed these rent escalation proposals and claims with the GSA (the last of which was filed June 19, 1980), the GSA discussed them with the plaintiff from time to time, but no agreement was reached regarding them. How-

---

1. 41 U.S.C. § 605(c)(1) provides:

Amount of claim; certification; notification; time of issuance; presumption

(c)(1) A contracting officer shall issue a decision on any submitted claim of $50,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period. For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

ever, the plaintiff never asked for a decision by the contracting officer as required by 41 U.S.C. § 605(a).[2]

On August 12, 1980, Arlington filed suit against the government in the Eastern District Court of Virginia (C.A. No. 80–0773–A) in which it sought damages by alleging that the GSA had breached the Polk and Taylor leases by failing to adjust and escalate the rents which it claimed were due under the leases. That case was dismissed without prejudice on Arlington's motion so that it could file suit on its claims in this court. At the time that suit was filed, Arlington advised the GSA that it was "washing its hands of the administrative process" and that it desired a judicial determination of its claims.

On February 19, 1981, Arlington wrote letters to the GSA that it had terminated the leases as of August 14, 1980, by serving the complaint in the district court case on the government, and that thereafter the GSA occupied the leased premises as a tenant at will and by reason thereof was required to pay the fair rental value of the premises which it alleged was at least $16 per square foot. In these letters Arlington demanded that within 5 days of their receipt, GSA vacate the premises and pay Arlington the following rents, including escalated rents, and rents due and owing under the tenancies at will:

| Leased Premises | Escalated Rent Through 8–14–80 | Rent Under Tenancies At Will From 8–14–80 Through 2–28–81 |
| --- | --- | --- |
| Taylor 1, 2 & 3 | $ 34,680.06 | $2,813,534.32 |
| Polk Premises | 122,876.90 | 2,437,884.49 |
| Total | $157,556.96 | $5,251,418.81 |

**2.** 41 U.S.C. § 605(a) provides:

§ 605. Decision by contracting officer—Contractor claims

(a) All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the

Arlington also informed GSA that if it failed to vacate the premises by that time, GSA would continue its tenancy at will on a month-to-month basis and be obligated to pay Arlington $374,506.00 per month as rent at the fair market rate for the Polk premises, and $518,165.33 per month as rent at the fair market rate for the Taylor Units 1, 2 and 3 premises.

The government did neither, and Arlington thereupon filed this action on March 4, 1981, alleging the foregoing facts and seeking a judgment awarding it the escalated rent demanded and allegedly due it up to August 14, 1980, when it contends the leases terminated, and rent claimed to be due under the alleged tenancies at will at the fair market rate thereafter, and the cost of various construction and repair work, together with the cost of various extraordinary services and utility bills.

Although the plaintiff never requested a decision from the contracting officer, a decision was issued by him *sua sponte* on May 20, 1981. He found that meetings were held by GSA representatives and Arlington on September 17, October 10, and December 30, 1980, to discuss the issues, and that GSA had made an offer of settlement to the plaintiff in which GSA would pay certain back rentals, but that the plaintiff never accepted nor rejected the offer. He found further that the government had not breached the leases and that they remained valid and in full force and effect. Also, he ruled that the government should pay Arlington $654,724.47 to cover the tax and operating cost increases due up through March, 1981, for both buildings, and thereafter pay $143,781.78 per month for the

reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation, which another Federal agency is specifically authorized to administer, settle, or determine. This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.

Polk building and $200,632.78 per month for the Taylor building.[3]

On June 24, 1981, Arlington filed a notice of appeal with the Contracting Officer and the case was assigned No. 6220 by the General Services Administration Board of Contract Appeals (GSBCA or the Board).

On July 31, 1981, Administrative Judge Cyrus E. Phillips IV of the GSBCA, at the request of Arlington, ordered further proceedings in that appeal suspended to permit the parties and this court to take such further action in this matter as may be warranted.

On September 21, 1981, Arlington submitted to Arthur M. Turowski, the contracting officer, a certification of its claims against the government for the purpose of supplying the necessary certificate *nunc pro tunc* to all of Arlington's written claims previously submitted to the contracting officer in its rent escalation proposals and in the complaint filed in the district court action and in the petition filed here. In doing so, it was apparently trying to comply *nunc pro tunc* with the requirements of 41 U.S.C. 605(c)(1).

The plaintiff's petition contains two counts, namely Count I and Count II. We consider them in reverse order as follows.

## COUNT II

In Count II of the petition (paragraphs 26 through 32) the plaintiff claims that the government owes it the sum of $129,527.78 for certain construction and repair services, other extraordinary services, and the consumption of extraordinary amounts of electricity by print shop and computer facilities installed by the defendant. However, the parties have agreed that all of these claims have been paid by the government to the plaintiff. The plaintiff has, accordingly, abandoned all claims under Count II and agrees they are moot. Therefore, they must be dismissed.

## COUNT I

In Count I of the petition (paragraphs 5 through 25) Arlington alleges defendant materially breached the provisions for escalation of rents, for increases in operating costs and real estate taxes that are in the leases. It alleges that defendant, through the General Services Administration (GSA) materially breached the leases by failing to escalate rent on the three effective dates provided in the leases, by failing to negotiate in good faith for the escalation of rent, by failing to make a decision or counter offer to Arlington for escalation of rent, by failing to provide counter data to that provided by Arlington regarding rent escalation, and by failing to take over the services for which escalation for rent was sought by Arlington. Arlington claims these alleged material breaches warrant a finding by the court that Arlington could and did terminate the leases on August 14, 1980, by service on defendant of the complaint of the law suit filed on August 12, 1980, in the United States District Court for the Eastern District of Virginia. Arlington's view is that by reason of the alleged termination of the leases defendant must pay the fair market value for occupancy of the space and use of the services provided to defendant after August 14, 1980. For the period before that date, Arlington seeks escalation of the rent as provided in the leases. In this connection, it asks for judgment in the sum of $5,003,107.19 for unpaid escalated rents up to August 14, 1980, and thereafter at the rate of $29,348.12 per day, less amounts paid by the government.

The government counters by contending that there was no breach of the leases and that the plaintiff could not terminate the leases because it has an adequate remedy under the disputes clause in the leases, which required the plaintiff to submit its claims through the contracting officer to the Board. The government points out that the leases did not contain a termination or a

---

**3.** Pursuant to the decision of the contracting officer payments of escalated rent were made by GSA to Arlington on March 26 and on April 2, 1981, in the sums of $570,522.20 and $84,- 202.27, respectively (a total of $654,724.47), which were accepted by Arlington without prejudice to its rights.

forfeiture clause and in their absence all disputes were required to be disposed of under the disputes clause.

■ We agree with the defendant that the leases did not terminate by the service by plaintiff of the district court complaint on the government on August 14, 1980, or thereafter by actions of the plaintiff. The contracting officer has rendered a final decision on plaintiff's claims and the plaintiff has filed a timely notice of appeal from his decision to the Board where it is presently pending. The government has paid and will continue to pay the rent the contracting officer has decided is proper. If the plaintiff is not satisfied, it may seek a remedy before the Board.

In this case, the parties provided a mechanism in the leases whereby any dispute that could not be settled by agreement must be decided by the contracting officer, or upon appeal from his decision by the Board. There was no clause in the leases that gave the plaintiff the right to terminate them. The procedure for deciding all disputes is set forth in the standard disputes clause in the leases.[4] Under these circumstances, the plaintiff could not terminate the leases. *See Royce, Inc. v. United States*, 130 Ct.Cl. 115, 126 F.Supp. 196 (1954). Since the plaintiff has an adequate remedy under the leases, it must exhaust its administrative remedies by presenting its claims to the Board. *Zidell Explorations,*

*Inc. v. United States*, 192 Ct.Cl. 331, 427 F.2d 735 (1970).

■ The plaintiff insists that it does not have to exhaust its administrative remedies before the Board, because it sues here under 28 U.S.C. 1491 which allows a suit to be maintained for a breach of contract in this court without exhaustion of administrative remedies since a breach does not fall within the coverage of the disputes clause. It cites *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). While this is a correct statement of the law, it does not apply to the plaintiff's case because the plaintiff has failed to prove a breach of the contracts by the government. The plaintiff never submitted a certified claim of over $50,000, or of any other amount to the contracting officer, until September 21, 1981, after the contracting officer had made his decision and after this suit was filed. This submission did not meet the requirements of the law. The plaintiff did not ask the contracting officer for a decision on its rent escalation claims. Under these circumstances, the contracting officer was not required to do anything. Nevertheless, he rendered a decision on the submitted proposals on May 20, 1981. He found that the GSA had met with the plaintiff on three different occasions to discuss the claims, and finally made an offer which the plaintiff neither accepted nor rejected. He also found that the

4. The disputes clause provided:
*DISPUTES*
a. Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the contracting officer, who shall reduce his decision in writing and mail or otherwise furnish a copy thereof to the lessor. The decision of the contracting officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the lessor mails or otherwise furnishes to the contracting officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by

such official or his representative or board is alleged. Provided, however, that any such decision shall be final and conclusive, unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessary to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the contractor shall proceed diligently with the performance of the contract and in accordance with the contracting officer's decision.
b. This dispute clause does not preclude consideration of questions of law in connection with the decisions provided for in Paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative or board on question of law.

government owed back escalated rent through March, 1981, in the sum of $654,-724.47 which has been paid, together with future escalated rents in the sum of $143,-781.78 per month for the Polk building and $200,632.78 per month for the Taylor building, which the government has paid and continues to pay. He further found that the government had not breached the leases. We agree. Consequently, in the absence of a breach of contract, we do not have jurisdiction of the plaintiff's suit on that theory under 28 U.S.C. 1491.

The plaintiff contends in its brief that we have jurisdiction of its Count I claims under the Contract Disputes Act of 1978 (41 U.S.C. 601, *et seq.*), although there is no allegation to this effect in its petition.[5] The plaintiff says that the Act authorizes it to either appeal the decision of the contracting officer to the Board or bring an action directly on the claim in this court. It cites Section 609(a)(1) of the Act in support of this argument. That Section provides as follows:

> § 609. Judicial review of board decisions—Actions in United States Court of Claims; district court actions; time for filing
>
> (a)(1) Except as provided in paragraph (2) and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.

This Section of the Act is of no help to the plaintiff, because, as pointed out below, the plaintiff has failed to comply with other jurisdictional sections of the Act. It is uncontroverted that when the plaintiff submitted its rent escalation claims to the contracting officer, it did not attach or include the certificate required by Section 605(c)(1) (quoted above in fn. 1), and Section 605(c)(2), which provides as follows:

(2) A contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000—

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued.

We have held that the furnishing of the certificate is an absolute jurisdictional requirement in order for us to have jurisdiction of a contract claim for more than $50,-000. *See Paul E. Lehman, Inc. v. United States,* —— Ct.Cl. ——, 673 F.2d 352 (1982); *W. H. Moseley Co., Inc. v. United States,* 677 F.2d 850 (1982); and *Folk Construction Co. v. United States,* Ct.Cl. No. 99–80C (order entered January 16, 1981). In the *Lehman* case we held:

> The import of the language of the Act and its legislative history is that unless a claim has been properly certified, it cannot be considered under the statute. As we said in *Folk,* "The statute thus requires that to be valid a claim must be properly certified." Unless that requirement is met, there is simply no claim that this court may review under the Act.
>
> Consistent with this statutory language and history, the Armed Services Board of Contract Appeals has held that a claim cannot be considered until it is certified. *E.g., Newell Clothing Co.,* 80–2 BCA ¶ 14,774 (1980); *Harnischfeger Corp.,* 80–2 BCA ¶ 14,541 (1980); *Allied Materials & Equipment Co.,* 80–1 BCA ¶ 14,340 (1980). The Defense Acquisition Regulations state that a claim is not valid until it is certified. DAR § 1–314(b)(1), 45 Fed.Reg. 81402, 81406 (1980). The proposed Federal Acquisition Regulations are similar. FAR § 33.001, 46 Fed.Reg. 9669 (1981). The construction of the statute by those charged with administering it is persuasive. *Sea-Land Service, Inc. v. United States,* 204 Ct.Cl. 57, 76, 493 F.2d 1357, 1368, *cert. denied,* 419 U.S. 840, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).

\*　　\*　　\*　　\*　　\*　　\*

---

5. The plaintiff states that it will amend its petition to allege jurisdiction under the Contract

Disputes Act if we deem it necessary.

Congress has determined that certification is necessary for there to be a valid claim under the Act. 673 F.2d at 355–356.

The plaintiff argues that after it submitted its rent escalation claims to the contracting officer, it certified them as required by the Act by (1) certifying to the complaint filed in the district court action, and serving it on the defendant, (2) by certifying to the complaint and serving it on defendant in this suit, and (3) by furnishing a certificate to the contracting officer on September 21, 1981. The same argument was made in the *Moseley* case. There the contractor claimed that subsequent letters, documents, a supplementary memorandum, and an economic analysis, taken as a whole amounted to a certification. We rejected that contention, saying:

> * * * Because of the significant role certification plays in the statutory scheme, we hold that to properly certify a claim a contractor must make a statement which *simultaneously* makes all of the assertions required by 41 U.S.C. § 605(c)(1). (At 852) (Emphasis supplied.)

In *Moseley* the contractor later went back to the contracting officer and certified his claim, just as the plaintiff has done in the instant case, and claimed, as the plaintiff does here, that such certification was sufficient. We did not agree, saying:

> Finally, plaintiff argues that now that it has gone back to the contracting officer and certified the pertinent claim, it should be able to gain direct access to the court. However, *Lehman* implicitly rejects that argument. The court in *Lehman* directed the plaintiff to a relevant board of contract appeals, with the right to subsequent judicial review in this court. And, as *Lehman* concluded, plaintiff cannot be heard to complain about this result since "[a]lthough the plaintiff's trial *de novo* will be before the Board rather than before this court, that is the consequence of the plaintiff's own default in failing to certify its claim as the Act requires." (At 852).

Finally, Arlington says that since its case is pending here and also before the Board it has a choice under Section 609 of the Act as to which tribunal will hear its case. This argument was made and rejected in *Santa Fe Engineers, Inc. v. United States*, 677 F.2d 876 (1982). In that case the contractor appealed a contracting officer's decision to the Board and later obtained a suspension order, as in our case, so that he might file an action in this court. We held that having elected to go to the Board, the plaintiff could not "according to our holding in *Tuttle/White Constructors, Inc. v. United States* [228 Ct.Cl. ——, 656 F.2d 644 (1981)] come directly to this court under 41 U.S.C. § 609." In that case, we said:

> We hold that * * * by electing to appeal to the board, plaintiff has foreclosed direct access to this court. (At 878).

■ The facts in the instant case are somewhat different to those in the *Santa Fe Engineers* case, but the ultimate situation is the same. Here the plaintiff filed suit in this court before he appealed his case to the Board. However, as stated above, it did not certify its claim, with the result that we have no jurisdiction of its case. Thus, as in *Santa Fe Engineers*, the plaintiff by electing to appeal to the Board has foreclosed direct access to this court.

We hold that the government did not breach the leases involved here and, therefore, we have no jurisdiction of plaintiff's breach of contract suit under 28 U.S.C. 1491. We hold further that the failure of plaintiff to certify its claims when they were submitted to the contracting officer deprives us of jurisdiction of its suit under the Contract Disputes Act (41 U.S.C. 601, *et seq.*). Since we lack jurisdiction to entertain plaintiff's case, it must be dismissed. We find it unnecessary to consider other issues raised by the parties.

Accordingly, defendant's motion for summary judgment is granted and Count I of plaintiff's petition is dismissed without prejudice. Count II of plaintiff's petition is dismissed with prejudice because it is moot.