T.J.D. SERVICES, INC., d/b/a Century
Ambulance Service

v.

The UNITED STATES.

No. 674–82C.

United States Claims Court.

Sept. 11, 1984.

Nicholas M. DeVito, Cleveland, Ohio, for plaintiff.

Joan M. Blumberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This contract case comes before the Court on defendant's motion to dismiss. Because this Court lacks jurisdiction, the defendant's motion to dismiss is hereby granted, and the plaintiff's complaint is to be dismissed without prejudice.

### Facts

On September 12, 1979, Contract V541P–494 (494), in the estimated amount of $427,-960, was awarded by the Veterans Administration (VA) to Metro Ambulance for ambulance services in Cleveland, Ohio, for the period of October 1, 1979 through September 30, 1980.[1] On September 22, 1980, Contract V541P–620 (620), in the estimated amount of $468,450, was awarded to the plaintiff, Century Ambulance Service (Century), for ambulance service in Cleveland,

---

1. This Court has assumed, for purposes of ruling on the defendant's motion to dismiss, that the requisite privity of contract exists between Metro Ambulance, the Veterans Administration, and Century Ambulance Service, the plaintiff herein, so that Century Ambulance Service may, provided the other prerequisites of the Contract Disputes Act have been satisfied, maintain an action for damages, resulting from the VA's breach of Contract 494.

Ohio, during the period October 1, 1980 through September 30, 1981. On September 30, 1981, Contract KV541P–730 (730), in the estimated amount of $275,755.55, was awarded to the plaintiff for ambulance services in Cleveland, Ohio, during the period October 1, 1981 through September 30, 1982. These contracts were for the rendering of ambulance services to the VA Medical Centers (Brecksville and Wade Park Units), in and around Cleveland, Ohio.

The contracts provided that whenever ambulance services were required by the VA at the Brecksville and/or Wade Park Units that Metro Ambulance Service, under Contract 494, or Century Ambulance Service, under Contracts 620 and 730, would be promptly notified and utilized prior to any other ambulance service establishment. However, if upon notifying the plaintiff the VA was informed that Metro Ambulance Service, under Contract 494, or Century Ambulance Service, under Contracts 620 and 730, would be unable to provide immediate service, the VA would then be permitted to seek out and obtain the services of another ambulance company.

In June of 1981, plaintiff commenced an action against the VA in Ohio's Court of Common Pleas for Cuyahoga County, for breach of Contract 620. On July 23, 1981, the Government moved to dismiss the complaint for lack of jurisdiction. The state court granted the agency's motion and dismissed the complaint on December 10, 1981.

On July 2, 1981, the plaintiff's counsel forwarded a letter to the VA contracting officer "making demand for breaches and violation of its contract with the Veterans Administration in the sum of $200,000.00." The letter, however, failed to indicate upon which Contract, 494 or 620, the plaintiff was seeking damages or to indicate the portion of demanded damages to be allocated to Contract 494 and/or to Contract 620.

By letter dated August 5, 1981, plaintiff made a claim to the agency's contracting officer for breach of Contract 620 and demanded money damages of approximately $150,000 based upon allegations of breach

of contract and fraudulent payoffs to the VA by competing ambulance companies. Plaintiff's August 5, 1981 letter contained the following paragraph, whereby the plaintiff apparently attempted to certify its claim to the VA contracting officer:

I, THOMAS J. DONOVAN, President and Senior official of Century Ambulance Service, certify the above as being made in good faith. Also, the supporting data is accurate and complete to the best of my knowledge and belief, and that the amounts, unknown at this time, accurately reflect the contract adjustment for which the government is liable.

At the time of his August 5th letter, the plaintiff was unable to determine the exact amount of damages arising out of Contract 620. However, he did indicate within the letter that his damages probably exceeded $150,000.

Accordingly, on August 13, 1981, and again on September 10, 1981, the VA contracting officer made written requests to the plaintiff for documentation supporting plaintiff's claim for breach of Contract 620. Plaintiff was advised that, without such supporting documentation, the contracting officer would be unable to render a decision on the claim as required by the Contract Disputes Act of 1978 (CDA). The plaintiff, however, has never complied with these requests, and, as a result, the contracting officer has not issued a decision on this claim.

On December 23, 1981, the VA contracting officer received a complaint from the VA regarding Century's refusal to perform any ambulance services, pursuant to Contract 730. In response, the contracting officer sent letters dated December 24, 1981, and December 28, 1981, notifying Century that Contract 730 had been terminated for default due to its failure to perform and that such termination was the contracting officer's "final decision in this matter." Further, in the contracting officer's letter of December 28, 1981, he stated that Century could appeal his decision to either the VA Board of Contract Appeals or to this

Court's predecessor, the U.S. Court of Claims.

On December 27, 1982, Century filed a complaint in the United States Claims Court seeking damages in the sum of $300,000 on all three contracts. In the plaintiff's subsequent brief in opposition to the defendant's motion to dismiss, the plaintiff allocated its alleged damages in the following manner:

[O]ne Hundred Thirty-five Thousand Five Hundred Eighteen Dollars and Seventy-two Cents ($135,518.72) onContract 494, Seventy-four Thousand Six Hundred Ninety-seven Dollars and Fifteen Cents ($74,697.15) on Contract 620 and Ninety Thousand Four Hundred Thirty Dollars and Forty Cents ($90,430.40) on Contract 730, for a total of Three Hundred Thousand Six Hundred Forty-six Dollars and Twenty-seven Cents ($300,646.27).

These damages allegedly result from the VA failing to comply with the terms of the contracts entered into between the parties, whereby the VA utilized the services of other ambulance companies on many occasions throughout the periods in which the instant contracts were in effect. The plaintiff has alleged that it had ambulances available but was not first notified by the VA in order that service could be rendered. Further, the plaintiff has alleged that Contract 730 had been wrongfully terminated for default by the VA contracting officer.

*Discussion*

■ In order to bring a direct access action to this Court under the Contract Disputes Act of 1978, the plaintiff must have: (1) presented a written and properly certified claim to the Government contracting officer, and (2) obtained a final decision by that contracting officer on the claim. *Thoen v. United States*, 5 Cl.Ct. 823 at 825 (1984); *Milmark Services, Inc. v. United States*, 231 Ct.Cl. 954, 956 (1982). *See also Troup Bros. v. United States*, 231 Ct.Cl. 707 (1982); *White Plains Iron Works, Inc. v. United States*, 229 Ct.Cl. 626

(1981); *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 645 F.2d 966 (1981).

Specifically, 41 U.S.C. § 605(c)(1) requires that:

For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

■ This Court has consistently interpreted this provision of the Contract Disputes Act as requiring the furnishing of such a certificate, by the contractor, in order for this Court to acquire direct access jurisdiction over a contract claim exceeding $50,000. *Palmer & Sicard, Inc. v. United States*, 4 Cl.Ct. 420, 422 (1984); *Conoc Constr. Corp. v. United States*, 3 Cl.Ct. 146, 148 (1983); *Metric Constr. Co. v. United States*, 1 Cl.Ct. 383, 389 (1983); *Arlington Alliance, Ltd. v. United States*, 231 Ct.Cl. 347, 357, 685 F.2d 1353, 1359 (1982). *Accord, W.M. Schlosser Co. v. United States*, 705 F.2d 1336 (Fed.Cir. 1983); *Skelly and Loy v. United States*, 231 Ct.Cl. 370, 685 F.2d 414 (1982); *W.H. Moseley Co. v. United States*, 230 Ct.Cl. 405, 677 F.2d 850 (1982); *Paul E. Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 673 F.2d 352 (1982); *Folk Constr. Co. v. United States*, 226 Ct.Cl. 602 (1981).

■ Moreover, the contracting officer must have issued his final decision on the properly certified claim(s) before this Court acquires direct access jurisdiction over the claim(s). In this regard, 41 U.S.C. § 609(a) (1982) provides that:

(1) Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract pro-

vision, regulation, or rule of law to the contrary.

\*   \*   \*   \*   \*   \*

(3) Any action under paragraph (1) or (2) shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

Thus, until a final decision has been rendered by the contracting officer, the plaintiff has not exhausted his administrative remedies. *Tri-Central, Inc. v. United States*, 230 Ct.Cl. 842, 845 (1982). The linchpin for appealing claims under the Contract Disputes Act is the contracting officer's final decision. *Paragon Energy Corp. v. United States, supra*, 227 Ct.Cl. at 177, 645 F.2d at 967 (1981). *See also Conoc Constr. Corp. v. United States, supra*, and *Paul E. Lehman, Inc. v. United States, supra*.

### Contract 494

■ In regard to Contract 494, the plaintiff has articulated three arguments, in the alternative, to show that it has properly certified its Contract 494 claim. Initially, the plaintiff argues that its letter of July 2, 1981, constituted its submission of a written claim for damages to the VA contracting officer, pursuant to the Contract Disputes Act. This Court, however, is unconvinced that a letter containing no more than a demand for damages, absent any identification upon which contract the damages arise or any identification of the grounds upon which the claim is founded, can constitute a valid *written* claim within the scope of the Contract Disputes Act. *See*, 41 U.S.C. § 605(a) (1982). Further, since the plaintiff has admitted that its damages resulting from the Government's alleged breach of Contract 494 exceed $50,000, his letter of July 2, 1981, constituted the submission of an invalid claim to the Government contracting officer due to its

failure to properly certify the claim pursuant to section 6(c)(1) of the Contract Disputes Act. 41 U.S.C. § 605(c)(1) (1982); *Folk Constr. Co. v. United States, supra*, 226 Ct.Cl. at 604. In addition, the July 2, 1981 letter was signed by the plaintiff's attorney and not by the contractor himself. The CDA specifically calls for the certification to be signed by the contractor. 41 U.S.C. § 605(c)(1) (1982); *W.H. Moseley Co. v. United States, supra*, 230 Ct.Cl. at 407, 677 F.2d at 852.

■ Alternatively, the plaintiff argues that, if the letter of July 2, 1981, was ineffective to certify its Contract 494 claim, this Court should consider its letter of August 5, 1981, to the VA contracting officer, as its submission of a written, certified claim. However, this letter expressly indicates that it represents a claim for damages for the alleged breach of Contract 620 rather than Contract 494. Therefore, the plaintiff's argument that its August 5th letter constituted the submission of a claim on Contract 494 is likewise of no merit.

■ Finally, the plaintiff argues that, if both of the above two letters have failed to properly certify its Contract 494 claim, its counsel's letter of April 6, 1983, constituted a written, certified claim. However, this argument is likewise defective for two reasons. First, the letter fails to simultaneously certify the plaintiff's claim for damages resulting from the breach of Contracts 494, 620 and 730.[2] *W.H. Moseley Co. v. United States, supra*, 230 Ct.Cl. at 407, 677 F.2d at 852. In fact, the letter contains no certification language whatsoever. Second, under this Court's prior interpretations of section 6(c)(1), of the Contract Disputes Act, it has been repeatedly determined that the contractor must personally certify his written claim for damages in excess of $50,000. *Id.* Here, even assuming that the plaintiff's letter of April 6, 1983, contained the necessary certification language, it is again signed only by the plaintiff's attorney and, as such, cannot

---

**2.** The plaintiff's letter of April 6, 1983, while expressly setting out the amount of damages demanded for the Government's alleged breach of Contract 730, fails to allocate the exact amount of damages allegedly arising from Contract 494 and from Contract 620.

constitute a certified claim. Therefore, the plaintiff has failed to properly present a written, certified claim for the VA contracting officer's decision and, as such, this Court lacks jurisdiction to consider the plaintiff's claim for damages under Contract 494. *W.H. Moseley Co. v. United States, supra,* 230 Ct.Cl. at 406, 677 F.2d at 851.

### Contract 620

■■■■ The plaintiff, with regard to its claim for damages under Contract 620, has responded that its letter of August 5, 1981 constituted the submission of a written certified claim for damages to the VA contracting officer.[3] However, the plaintiff's alleged attempt at certification is defective in that it fails to certify a particular requested amount as accurately reflecting the contract adjustment for which the contractor believes the Government is liable. 41 U.S.C. § 605(c)(1). As the Court of Claims stated in *Skelly and Loy v. United States:*

> In brief, certification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim under section 604 of the Act. It is also designed to "discourage the submission of unwarranted contractor claims and to encourage settlements."

231 Ct.Cl. at 376, n. 11, 685 F.2d at 418, n. 11. In attempting to certify a claim for an unknown amount, the plaintiff is defeating the long-standing public policy reasons behind the certification requirement. S.Rep. No. 1118, 95th Cong., 2d Sess. 5, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5235, 5239. Further, this Court has expressly held that the contract adjustment sought must be set out simultaneously with the certification. *W.H. Moseley Co. v. United States, supra,* 230 Ct.Cl. at 407, 677 F.2d at 852. Under the certification requirement of the Contract Disputes Act, the amount of contract adjustment cannot be deter-

mined in a piecemeal fashion through supporting documents and correspondence. *Id.* In addition, the plaintiff ignored two specific requests from the Government for further information which would support the plaintiff's claims in Contract 620. By letters dated August 13, 1981, and September 10, 1981, the Government referenced the plaintiff's letter of August 5, 1981, and specifically requested further documents and information that would support its claims of breach and illegal payoffs.

■■■ Thus, the plaintiff has two initial hurdles to overcome if this Court is to acquire direct access jurisdiction over this Contract 620 claim. First, the plaintiff must present a valid written certified claim to the contracting officer complete with the appropriate supporting documentation and exact figures, which it did not do. Second, the plaintiff must receive a final decision from the contracting officer on the claim. *See also* 41 U.S.C. § 605(c)(5) (1982). Until these events have occurred, the plaintiff's case is premature in this Court. *W.H. Moseley Co. v. United States, supra,* 230 Ct.Cl. at 406, 677 F.2d at 851.

### Contract 730

■■■ In regard to Contract 730, the plaintiff has argued that this Court has jurisdiction to consider the plaintiff's claims resulting from the VA's wrongful termination of Contract 730, since the contracting officer has rendered a final decision and directed the plaintiff to initiate the instant action if it did not agree with the contracting officer's determination. According to this Court's prior decisions, however, absent the submission of a properly written certified claim to the contracting officer, no "decision" by the contracting officer was possible. *Palmer & Sicard, Inc. v. United States,* 6 Cl.Ct. 232 1984); *Conoc Constr. Corp. v. United States, supra,* 3 Cl.Ct. at 147–48. *See also Paul E. Lehman, Inc. v. United States,*

---

**3.** The plaintiff has admitted within the context of its brief in opposition to the defendant's motion to dismiss that its claim for contract adjust-

ment on Contract 620 exceeds $50,000. Thus, section 6(c)(1) required the plaintiff to certify its claim for contract adjustment

supra; *Paragon Energy Corp. v. United States, supra.* The fact that a Government contracting officer has rendered a final decision on the merits of an uncertified claim is of no consequence, as he had no authority to waive a requirement that Congress has imposed. *Warchol Constr. Co. v. United States,* 2 Cl.Ct. 384, 389 (1983). *See also Paul E. Lehman, Inc. v. United States, supra,* 230 Ct.Cl. at 17, 673 F.2d at 356; *W.H. Moseley Co. v. United States, supra.* Therefore, notwithstanding the fact that the contracting officer forwarded the plaintiff a letter dated December 28, 1981, indicating that that letter represented his final decision, this Court lacks jurisdiction to consider the plaintiff's claim for damages under Contract 730. Assuming the plaintiff has a claim for money damages under Contract 730, it must file a properly certified claim with the contracting officer, pursuant to the mandatory requirements of the CDA before this Court can acquire direct access jurisdiction.

The proper course of action—for a contractor whose case is dismissed for lack of jurisdiction—is the following: (1) properly certify the claim; (2) resubmit the certified claim to the contracting officer; (3) if there is then an adverse contracting officer's decision, appeal either to the board of contract appeals (41 U.S.C. § 606) or directly to this Court (41 U.S.C. § 609). *Skelly and Loy, supra,* 231 Ct.Cl. at 377, 685 F.2d at 419.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted, and the plaintiff's complaint is to be dismissed without prejudice.