**PREFAB PRODUCTS, INC.**

v.

**The UNITED STATES.**

**No. 669–84C.**

United States Claims Court.

May 9, 1986.

Charles V. Peppler, Coral Gables, Fla., for plaintiff.

Sylvia Brown, with whom were Asst. Attys. Gen. Richard K. Willard, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This case is now before the court on the defendant's motion to dismiss, or, alternatively, for summary judgment, filed November 15, 1985, the plaintiff's response in opposition, filed January 15, 1986, and the defendant's reply, filed January 31, 1986.

### History of Litigation

The litigation began in 1983 with the filing by the plaintiff, Prefab Products, Inc., of a complaint against the United States Postal Service (Postal Service) in the United States District Court for the Southern District of Florida. The complaint charged the Postal Service with breach of contract.

The Postal Service filed a motion to dismiss the action for lack of subject matter jurisdiction. That motion was based upon provisions of the Contract Disputes Act which restrict a government contractor either to the appropriate agency board of contract appeals (41 U.S.C. §§ 606–08 (1982)), or to the United States Claims Court (41 U.S.C. § 609 (1982)), in seeking relief from an unfavorable decision by the contracting officer on a claim submitted by the contractor.

In a memorandum opinion and order dated December 10, 1984, the District Court held that it lacked jurisdiction to adjudicate the cause of action. In lieu of dismissing the case, however, the District Court transferred it to the United States Claims Court.

The plaintiff then filed a complaint against the United States in this court on January 8, 1985, charging the Government with breach of contract and requesting a judgment in the amount of $328,522. The Government answered on April 12, 1985.

After a number of procedural matters were considered and disposed of by the court, the defendant's pending motion to dismiss or, alternatively, for summary judgment was filed.

### The Facts

There does not appear to be any genuine issue between the parties concerning the facts set out in this part of the order.

On April 15, 1982, the Postal Service issued Solicitation IFB No. 104230–82–A–0091 (the solicitation) for four different types of prefabricated retail modules, *i.e.*, for 283 stamp modules, 288 change modules, 120 weigh and mail modules, and 2,079 lockbox modules. The bids were to be quoted in unit prices, F.O.B. destination. The bid opening was held on May 20, 1982. The plaintiff's bid of $824.95 per unit for each type of module, F.O.B. destination, or a total of $2,285,111.45 for all units, was the lowest bid.

In a letter dated June 4, 1982, the contracting officer informed the plaintiff in part as follows:

> Your bid * * * has been determined unreasonably priced. Therefore, * * * Solicitation 104230–82–A–0091 is cancelled.

A letter of formal protest against the cancellation of the solicitation was written by the plaintiff to the General Counsel of the Postal Service under the date of June 14, 1982. This letter stated in part as follows:

> We have all the raw materials to build the 2,727 modules as well as the bank credit to finance the complete operation. In addition, we have specialized personnel to perform the work under the contracts and before the stipulated deadline.
>
> It is our opinion that it is unfair and discriminatory to be forced to go to another bidding when everyone knows ahead the price that we have previously given for the modules. This places us in a situation of inferiority with respect to all other bidders who know our price and may cut down their price accordingly.

Conversations followed between representatives of the Postal Service and of the plaintiff. Then, under the date of October 13, 1982, the Postal Service (acting through a contract specialist) wrote a letter to the plaintiff, stating as follows:

During the past several months extensive analysis of your July 13, 1982 cost proposal has been conducted. Concurrently, a pre-award survey was performed to determine your technical/production capability and your ability to meet the schedule of delivery. During this period, repeated discussions occurred regarding the extreme variance between your proposed unit price of $824.95 F.O.B. delivered and the USPS position of $450.00 per unit F.O.B. Origin. We acknowledge your position to reduce your offer by $95.00 per unit if the USPS pays for transportation, thus reducing your offer to $729.95 per unit F.O.B. Origin. However, the USPS considers this offer to be unreasonable.

You are herein requested to submit your most advantageous price per unit within ten (10) calendar days after receipt of this letter.

The plaintiff responded to the Postal Service's letter of October 13, 1982, by submitting the following proposal to the Postal Service in a letter dated October 21, 1982:

Even Though [sic] the price of material, labor and shiping [sic] have increased since May 20, 1982, in the interest of a good relationship with the Postal Service, and in the hope of doing more work for you in the future, we will reduce our price to $599.95 FOB Origing [sic]. This is our best price.

The price including delivery will be $107.87 more per unit.

In a letter to the plaintiff dated November 18, 1982, the contracting officer stated in part as follows:

Although your offer of $707.82 is 14.2 percent less than your originally offered per unit price of $824.95, it remains approximately 24 percent higher than the U.S. Postal Service estimate of $569.06 per unit delivered.

Accordingly, your final offer is found to be unreasonable as to price and is unacceptable to the U.S. Postal Service.

On December 7, 1982, the plaintiff sent a telex to the Postal Service, stating as follows:

According to our conversation on Tuesday morning December 7, 1982 we accept your offer price United States Postal Service $569.06 per unit delivered and ready to go there to sign a contract.

The Postal Service responded to the plaintiff's telex by means of a letter dated January 24, 1983, stating as follows:

Reference is made to your telex of December 7, 1982, accepting the United States Postal Service position of $569.06 per unit delivered to manufacture various types of retail modules.

Since the time of USPS correspondence dated November 18, 1982 where your bid was found to be unreasonably priced, an evaluation of the construction materials to be used in the manufacture of these units has been performed. At this time, the Postal Service does not wish to proceed with the procurement. Accordingly, the retail modules solicitation is cancelled.

Under the date of February 2, 1983, the plaintiff supplemented its protest of June 14, 1982, by writing another letter of protest to the Postal Service, and asking that the two letters be considered "a formal protest and objection to the cancellation of IFB # 104230–82–A–0091." The relief requested in the protest was "that a full investigation be made to find out the reasons why the U.S. Postal Service is willing to pay more to other contractors than to Prefab Products, Inc."

In a decision dated May 2, 1983, an Assistant General Counsel of the Postal Service denied the plaintiff's protest.

The plaintiff then instituted the action in the District Court on May 9, 1983.

Under the date of December 17, 1985, the plaintiff, acting through its president and senior company officer, submitted to the contracting officer "a certification of a claim of more than $50,000.00." After setting out the supporting data upon which the claim was based, and fixing the amount of the claim as $353,163.95, the certification stated as follows:

This claim is made in good faith. At present, the supporting data is accurate and complete to Prefab's knowledge and belief. In the event that this claim is denied, further supporting data may be discovered during the course of litigation. Also, Prefab's attorney has supporting data which is protected by the attorney-client and work product privileges. The amount shown in numbered paragraph 13 is an accurate figure for which Prefab believes the USPS is liable.

*Discussion*

The defendant's motion to dismiss is based upon the circumstance that, although the plaintiff's complaint in this court was filed on January 8, 1985, and asserts a claim against the United States in the amount of $328,522, no certified claim was submitted by the plaintiff to the contracting officer until on or about December 17, 1985.

The statutory plan for the handling of claims by government contractors against the United States, as prescribed by the Contract Disputes Act, provides that *all* claims by a contractor against the Government relating to a contract *shall* be in writing and *shall* be submitted to the contracting officer for a decision; that with respect to a claim for more than $50,000, the contractor *shall* certify that the claim is made in good faith, that the supporting data are accurate and complete, to the best of the contractor's knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; that the contracting officer, within 60 days after receiving a certified claim for more than $50,000, *shall* issue a decision or notify the contractor of the time within which a decision will be issued; and that any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision denying the claim (41 U.S.C. § 605 (1982)).

The plan further provides that, within 90 days from the date of receiving a contract-

ing officer's decision, the contractor may appeal such decision to the appropriate agency board of contract appeals (41 U.S.C. § 606 (1982)), or that, in lieu of appealing to the agency board of contract appeals, the contractor may bring an action directly in the United States Claims Court, provided the action is filed within 12 months from the date on which the contractor receives the decision of the contracting officer (41 U.S.C. § 609(a) (1982)).

Thus, in order to institute a direct-access action in this court on a contract claim for more than $50,000, the plaintiff must first have presented a written and properly certified claim to the contracting officer. *Arlington Alliance, Ltd. v. United States,* 231 Ct.Cl. 347, 357–58, 685 F.2d 1353, 1359 (1982); *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 407, 677 F.2d 850, 852, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 14, 673 F.2d 352, 354 (1982). The filing of a certified claim with the contracting officer is a jurisdictional prerequisite to the filing of an action on the claim in the Claims Court. *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985); *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338 (Fed. Cir.1983); *Skelly & Loy v. United States,* 231 Ct.Cl. 370, 372, 685 F.2d 414, 416 (1982); *W.H. Moseley Co. v. United States, supra,* 230 Ct.Cl. at 407, 677 F.2d at 852; *Paul E. Lehman, Inc. v. United States, supra,* 230 Ct.Cl. at 16, 673 F.2d at 355.

■ It has been noted previously in the order that the plaintiff did file a certified claim with the contracting officer on or about December 17, 1985. That was, of course, more than 11 months after the plaintiff had filed its complaint in this court. The plaintiff's retroactive filing of a certified claim was ineffective under the Contract Disputes Act and did not cure the original failure to certify the claim at the proper time. *W.M. Schlosser Co. v. United States, supra,* 705 F.2d at 1338.

■ Moreover, in order for a contractor to invoke the proper jurisdiction of this

court under the direct-access provisions of the Contract Disputes Act, there must also be a previous decision by the contracting officer on the claim (or a failure by the contracting officer to render a decision within the required period). As our predecessor, the Court of Claims, said in *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981):

> * * * [T]he linchpin for appealing claims under the Contract Disputes Act is the contracting officer's "decision." No appeal, whether under 41 U.S.C. § 606 * * * to the agency board of contract appeals or to this court under § 609, may be taken without such a "decision." * * *

The plaintiff concedes that the court does not have jurisdiction to consider the merits of the plaintiff's claim in its present posture. The solution proposed by the plaintiff would have the court stay further judicial proceedings until after the contracting officer renders a decision on the certified claim which the plaintiff submitted to the contracting officer on or about December 17, 1985. As was pointed out by the court earlier in this order, however, the belated filing of a certified claim with the contracting officer, after the judicial proceedings had been instituted, was ineffective and failed to cure the original failure to certify the claim at the proper time. The plaintiff's request for a stay, therefore, must be denied.

### Conclusion

For the reasons previously stated, the court concludes that it lacks jurisdiction to adjudicate the merits of the claim that is before the court in the present litigation, and that the court would still be without jurisdiction if the contracting officer were to render an adverse decision on the certified claim which the plaintiff belatedly submitted to the contracting officer on or about December 17, 1985, after the present legal action was instituted. That being so, the court must necessarily dismiss the present complaint.

Accordingly, the defendant's motion to dismiss is granted.

On the other hand, the court believes that the plaintiff should be afforded an opportunity to test the merits of its claim by resubmitting the claim, properly certified, to the contracting officer, and then, if there is an adverse decision by the contracting officer, either appealing to the agency board of contract appeals under 41 U.S.C. § 606 or filing a new complaint in this court under 41 U.S.C. § 609. *Cf. Skelly & Loy v. United States, supra,* 231 Ct.Cl. at 370, 685 F.2d at 418.

The clerk will dismiss the complaint, but the dismissal shall be without prejudice.

No costs.

IT IS SO ORDERED.