**Walter STRAGA**

v.

**The UNITED STATES.**

**No. 173–84C.**

United States Claims Court.

May 1, 1985.

---

Joseph C. Kovars, Washington, D.C., for plaintiff. William Huddles and Braude, Margulies, Sacks & Rephan, Washington, D.C., of counsel.

R. Anthony McCann, Washington, D.C., with whom was Acting Asst. Atty. Gen.

Richard K. Willard, Washington, D.C., for defendant.

## OPINION

LYDON, Judge:

In this direct access construction contract case, brought under the Contract Disputes Act (41 U.S.C. § 609(a)(1)) (CDA), plaintiff seeks to recover additional compensation on alternative theories of constructive change or contract reformation based on plaintiff's unilateral mistake. Defendant has moved to dismiss plaintiff's action on the ground that the court lacks jurisdiction thereof under the CDA because plaintiff never submitted a claim within the purview of the CDA to the contracting officer. In the alternative, defendant has cross-moved for summary judgment on the merits of the action, supporting its cross-motion by appended documentation. Plaintiff opposes defendant's motion to dismiss and has moved for summary judgment on the merits, supporting its motion by appended documentation. Upon consideration of the submissions of the parties, and without oral argument, the court concludes it does not have jurisdiction over this action.

### I.

Prior to September 1982, the Department of the Army issued an Invitation for Bids for the construction of a test facility building at the Aberdeen Proving Ground in Maryland. The contract was to be a fixed price contract. Four bids were received in response to the Invitation. Plaintiff's bid of $198,700 was the lowest bid. The next lowest bid was $264,950 and the government's cost estimate for the project was $261,521.

Because plaintiff's bid price was deemed far below the next low bid price and the government's estimate, the contracting officer requested that plaintiff verify its bid. By letter dated September 29, 1982, plaintiff advised the contracting officer it had reviewed its work sheets, found them to be

correct, and verified its bid as previously submitted.

On October 21, 1982, the contracting officer again wrote plaintiff expressing concern over plaintiff's bid in relation to the next lowest bidder and the government's estimate. In this letter, the contracting officer requested plaintiff to furnish certain data, and further advised that since this was a critical project and since the contracting officer had doubts about plaintiff's ability to successfully complete the project at its bid price, he was going to perform a Pre-Award Survey of plaintiff to ensure plaintiff's responsibility.

Following receipt and analysis of the data requested above, the contracting officer wrote plaintiff on December 3, 1982, in pertinent part as follows:

> a. Your "take-off" appears to indicate that you propose to use 41.5 CY of 4000 PSI ready-mix concrete and 61 CY of 4000 PSI Borated Concrete. The specification clearly says all concrete will be borated. See Specification 82aj, Page 6–7, Para 2.4B. The Government estimate is for 120 CY of borated concrete. We called Mr. Ayres of S & G Concrete Company, your supplier, and he confirmed that his quote to you is for 120 CY of borated concrete. The total price for 120 CY borated concrete at $255.00/CY is $30,600.00. Your estimate of 41.5 CY unborated concrete at $46.80 is $1,942.20 and 61 CY borated concrete at $255.00/CY is $15,550.00 for a total price of $17,497.20 or a mistake in bid of $13,102.80.[1]

The December 3, 1982, letter concluded by advising plaintiff to "[p]lease respond in writing by 15 December 1982."

Plaintiff responded to the above letter on December 15, 1982, writing in pertinent part as follows:

Your premise that *all* concrete is to be borated is not consistant [sic] with the specifications for cast-in-place concrete which appears on drawing sheet T–1 of 8 as follows:

"All concrete for slab on grades and all concrete 1'–0" below finished floor shall be borated concrete, see specifications. All remaining concrete shall be normal stone aggregate concrete."

This specification clearly specifies that all concrete within 12 inches below the finished floor elevation is to be borated concrete and that *all remaining* concrete is to be normal stone aggregate concrete.

Furthermore specification section 2.4 G specifies in detail, exactly the procedure to be used when placing borated concrete on horizontal surfaces on normal concrete which is consistant [sic] with the specification of normal stone aggregate concrete, as well as borated concrete. The inclusion of this section into the specifications alone can lead to only one unmistakable conclusion—that the specification must *require* the use of both normal stone aggregate concrete as well as borated concrete.

Based on the above facts, the bid documents unequivocally specify the use of both normal stone aggregate concrete as well as borated concrete. After reviewing the entire bid documents, no other possible conclusion could be drawn.

\* \* \* \* \* \*

In conclusion, the government has no option but to award this contract to WALTER STRAGA, since the bid submitted was in compliance with the specification and drawings. In preparing our bid there was no reason to feel that the specifications were ambiguous pertaining to the concrete; therefore no questions

---

1. This letter dealt with other facets of the bid which are not in issue in this case. The only issue on the merits concerns the type and attendant quantity of concrete. The contract documents required the contractor to furnish and install cast-in-place concrete at various locations on the work site. While the contracting officer found a mistake in bid of $13,102.80, plaintiff seeks to recover $17,039.08 in this action. It is also worthy of note that the concrete issue only involved a mistake of $13,102.80, as computed by the contracting officer, whereas the spread between plaintiff's bid ($198,700) and the next lowest bidder ($264,950) and the government's estimate ($261,521) was $66,250 and $62,821 respectively.

were raised prior to bid opening. If the government wishes, at this time, to change a specification requirement, award of the contract to WALTER STRAGA can be made and a change to the concrete requirement can be negotiated after award at the price stated of $255.00 per cubic yard plus additional costs incurred as a result of this change and our standard markup.

In December 1982, there were discussions and correspondence between plaintiff and the contracting officer regarding extension of the time in which the bid could be accepted for contract award purposes. In response to the contracting officer's bid acceptance extension request, plaintiff by letter dated December 24, 1982, stated in pertinent part as follows: " * * * [W]e are willing to extend the acceptance period to Feb. 21, 1983, and we are still interested in being considered for the award of the above contract." Subsequent to plaintiff's letter of December 15, 1982, quoted in part, *supra,* there is no indication of any discussion or correspondence between plaintiff and the contracting officer regarding the concrete requirement of the specifications for the proposed contract prior to award of the contract.

On December 28, 1982, the contracting officer notified plaintiff that its bid of $198,700 had been accepted and the contract (No. DAAD05–83–C–0037) for construction of a test facility, Building 861, at the Aberdeen Proving Ground was awarded to him. The formal contract document (2 pages) which was executed by plaintiff and the contracting officer on or about December 28, 1982, contained the following pertinent language.

2. Drawings 32382 thru 32389, dated 21 May 1982, as subject and subordinate to the following indicated Specification 82ai, dated June 1982, entitled—Construction of Test Facility at Bldg 861, APG, with boron provided in all concrete as specified and cast iron pipe floor drain system in accordance with Drawing 32384.

Thereafter, plaintiff undertook performance of the contract.

On April 14, 1983, the contracting officer, Max J. Klessig, wrote plaintiff as follows:

. It has been learned through your supplier, S & G Concrete, and his supplier of boron frit, that you do not intend to furnish only borated concrete on this contract. This issue was addressed prior to award in our letter dated December 3, 1982, and in your response dated December 15, 1982. In your letter, you cited several provisions of the specifications and drawings to support your interpretation. You have apparently misinterpreted Specification No. 82ai, Part III, Section 6, Paragraph 2.4.B, Location: "Concrete containing boron shall be provided in all concrete." And you overlooked the two highlighted notes on pages S–1 and S–2 of the drawings which state: NOTE: All concrete shall be borated (see specifications).

In paragraph two of your letter, you refer to details

$$\frac{5}{C1\ C2}, \frac{6}{C1\ C2}, \text{ and } \frac{9}{C1\ C2},$$

which refer to No. 2 mix concrete. It is correct that this is a reference to the Maryland State Highway Administration Specification for 3,000 pound per square inch compressive strength concrete. However, these references conflict with the Specification No. 82ai, Part III, Section 6, Paragraph 2.4.C.1 which requires 4,000 pounds per square inch concrete. Additionally, these details have to do with the flood drain system, and the references to concrete are incidental. These references to mix No. 2 are erroneous and should have said mix No. 3. This is an ambiguity between the specifications and drawings which is to be resolved by complying with the specification which requires 4,000 pound per square inch concrete. This requirement is supported by Note 4.B on Page T–1 of the drawings. This conclusion is in accordance with General Provision I.339, Defense Acquisition Regulation 7–602.2, Specifications and Drawings (1964 JUN), explaining the order of precedence be-

tween specifications and plans. The full text is attached for your convenience.

Your interpretation of Note 4A on Page T-1 of the drawings would have been correct if it stood alone, but it does not stand alone. Page T-1 deals with general requirements. The following two pages, S-1 and S-2, deal specifically with concrete foundation work and take precedence over the general work on Page T-1. It is these two pages which have the highlighted notes requiring all concrete to be borated and they are consistent with the Specification No. 82ai, Part III, Section 6, Paragraph 2.4.B.

We grant that there are ambiguities in the specifications and drawings as discussed above. However, they are resolved by complying with the Specifications No. 82ai, Part III, Section 6, Paragraphs 2.4.A and B which require all concrete to be 4,000 pounds per square inch and to be borated. Furthermore, the Standard Form 23 contract award document, which you signed, specifies in Paragraph 2, "... with boron provided in all concrete as specified ..." Therefore you are directed to make the necessary arrangements to supply only borated concrete on this contract.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. * * * In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the US Claims Court within 12 months of the date you receive this decision. A copy of Defense Acquisition Regulation 7-103.12, Disputes (1980 JUN) is attached for your convenience.

On August 25, 1983, plaintiff wrote the Procurement Directorate, Army Aberdeen Proving Ground, Attention Mr. Thomas Douglas, in pertinent part as follows:

Please find enclosed our cost breakdown for the substitution of Borated Concrete in place of normal stone aggregate concrete in all locations for which concrete is specified on the above project, as per the final decision letter of the contracting officer, Mr. Max J. Klessig, dated April 14, 1983.

We request that you review this decision and our letter of December 15, 1982, also enclosed. It is not our desire to proceed with an appeal to the Armed Services Board of Contract Appeals or the U.S. Claims Court, as this becomes a very long drawn out and costly endeavor; however, we feel that we must do this if you will not intercede in our behalf. * *

We request that you review the contracting officers [sic] decision, our letter dated Dec. 15, 1982, and that you also include in your consideration the following points.

1. Our intention to use both normal stone aggregate concrete as well as borated concrete was known by the government well in advance of the date the contract was signed. Reference our letter dated Dec. 15, 1982, and your letter dated Dec. 3, 1982. The government signed a contract for this work without objecting to our intention. Instead, the government waited until April 14, 1983 to make a final decision exactly opposite our position. It appears that the government was willing to accept our interpretation in order to sign a contract; however once the contract was signed, the government decided to reverse their position. We clearly stated our intention concerning this question in our Dec. 15, 1982 letter. The contract is dated Dec. 28, 1982, and no other correspondence between ourselves and the government would indicate any change to our intention.

* * * * * *

[Plaintiff sets forth its interpretation of the contract documents and takes issue with the contracting officer's interpretation.]

We feel that the above review gives some indication as to the strength of our position over that taken by the government. We feel confident from our previous experience, that if we must pursue this matter through the Armed Services

Board of Contract Appeals or directly in the U.S. Claims Court that we will be successful; however for the benefits outlined at the beginning of this letter, which will benefit both the government as well as ourselves, we request that you review this matter as quickly as is possible and advise us of your decision. * * *

There is no indication in the materials before the court as to whether the August 25, 1983, letter, *supra*, was answered by the Procurement Directorate of the Aberdeen Proving Ground. Further, there is no indication in the materials before the court as to what position Thomas Douglas occupied in the Procurement Directorate and the extent of his authority.

On April 5, 1984, plaintiff filed its complaint in this court seeking recovery of $17,039.08, "plus interest, costs and attorneys' fees as provided by the Equal Access to Justice Act." Plaintiff alleged that the contracting officer's directive of April 14, 1983, that all concrete that plaintiff supplied for contract purposes be "borated" concrete constituted a constructive change which entitled plaintiff to the additional compensation it sought. Alternatively, plaintiff pleaded that its reasonable interpretation of the contract that it was not required to supply only "borated" concrete constituted a mistake of fact of which defendant had actual knowledge and that since defendant failed to permit correction of this bid mistake prior to award, defendant's unconscionable conduct entitled plaintiff to reformation of the contract to correct its bid mistake and thus prevent overreaching by the government.

## II.

Plaintiff filed its complaint in this court pursuant to the direct access provision of the CDA. *See* 41 U.S.C. § 609(a)(1). It is well established that in order for this court to have jurisdiction over such a claim, a contracting officer must have previously rendered a final decision. *See Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 183–84, 645 F.2d 966, 971–72 (1981). It is clear that the contracting officer ren-

dered a final decision in his April 14, 1983, letter to plaintiff. "The Act [CDA], however, denies the contracting officer the authority to issue a decision at the instance of a contractor until a contract 'claim' in writing has been properly submitted to him for decision. § 605(a). Absent this 'claim,' no 'decision' is possible—and, hence, no basis for jurisdiction in this court." *Paragon Energy Corp. v. United States, supra*, 227 Ct.Cl. at 184, 645 F.2d at 971. *See also Palmer & Sicard, Inc. v. United States*, 6 Cl.Ct. 232, 236 (1984); *Conoc Constr. Corp. v. United States*, 3 Cl.Ct. 146, 147 (1983); *Skelly and Loy v. United States*, 231 Ct.Cl. 370, 372–73, 685 F.2d 414, 416 (1982); *Lehman, Inc. v. United States*, 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982). Therefore, the issue, as identified by both parties, is whether a "claim" as intended by the CDA (41 U.S.C. § 605(a)) was submitted to the contracting officer for a decision.

The issue of what constitutes a "claim" under the CDA (41 U.S.C. § 605(a)) has been addressed by both this court and its predecessor. *See Hoffman Constr. Co. v. United States*, 7 Cl.Ct. 518 (1985); *Z.A.N. Co. v. United States*, 6 Cl.Ct. 298 (1984); *Paragon Energy Corp. v. United States, supra*. *Cf. Esprit Corp. v. United States*, 6 Cl.Ct. 546 (1984); *Palmer & Sicard, Inc. v. United States, supra*. It is clear, however, that no definitive view of what constitutes a claim has developed and such confusion, due to the general language of the CDA regarding a "claim", may continue until the Federal Circuit grapples with the question. However, this court has set out several factors which it has utilized to establish whether a particular piece of correspondence constitutes a claim. *See Hoffman Constr. Co. v. United States, supra*, 7 Cl.Ct. 518, 524–27.

■ The court in this case finds it unnecessary to delve into the factors considered in *Hoffman Constr. Co.* in order to determine whether either plaintiff's December 15, 1982, letter or its August 25, 1983, letter constitute claims submitted to the contracting officer and upon which the con-

tracting officer could properly base his decision. The August 25, 1983, letter was submitted after the contracting officer's April 14, 1983, decision. There is no way to find that the contracting officer's decision was based on the letter or claim which post-dated the decision. In order for the contracting officer's decision to be proper it must be based on a claim submitted prior to the rendition of the decision. Therefore, in this case, plaintiff's December 15, 1982, letter must be found to be a claim or the contracting officer's decision was improper and this court has no jurisdiction to hear plaintiff's claim. *See Paragon Energy Corp. v. United States, supra,* 227 Ct.Cl. at 184, 645 F.2d at 971.

In defendant's reply to plaintiff's opposition to its motion to dismiss, defendant concludes that the August 25, 1983, letter "appears to satisfy the requirements of a claim." (Dft's Br. at 3). Based on its view that the August 25, 1983, letter may constitute a claim, defendant notes that the contracting officer would be required to issue a decision within 60 (sixty) days (41 U.S.C. § 605(c)(1)), and his failure to do so would be deemed to be a decision by the contracting officer denying the claim. *See* 41 U.S.C. § 605(c)(5). Such a denial would authorize the commencement of a suit in this court under 41 U.S.C. § 609(a)(1). *See* 41 U.S.C. 605(c)(5). The court does not agree with defendant's apparent conclusion that the August 25, 1983, letter satisfies the requirements of a claim. A review of the letter clearly indicates that it was not submitted to the contracting officer for a decision as required by 41 U.S.C. § 605(a). To the contrary, the letter requests the Procurement Directorate to review the April 14, 1983, "final decision letter of the contracting officer." Such a written request is outside the pale of section 605(a) of the CDA. Clearly, the question of whether this court has jurisdiction over a claim is a legal one. Regarding an issue of law, this court is not bound by the stipulations or concessions of counsel. *See Swift & Co. v. Hocking Valley Ry. Co.,* 243 U.S. 281, 289, 37 S.Ct. 287, 289, 61 L.Ed. 722 (1917); *Hegeman Harris & Co. v. United States,*

194 Ct.Cl. 574, 581, 440 F.2d 1009, 1012 (1971).

The court concludes that plaintiff's December 15, 1982, letter also does not constitute a claim as intended by section 605(a) of the CDA. Section 605(a) states in pertinent part: "All claims *by a contractor* against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." (Emphasis added.) Section 601 of the CDA defines a contractor as "a party to a Government contract other than the Government * * *." At the time plaintiff submitted the December 15, 1982, letter he was a bidder and not a contractor and thus that letter cannot be considered a claim by a contractor under section 605(a) of the CDA. *See Coastal Corp. v. United States,* 713 F.2d 728 (Fed.Cir.1983).

In *Coastal Corp.,* the Federal Circuit set out the general principle that the CDA applies only to contracts for the procurement of goods and services (41 U.S.C. § 602(a)) and not the "implied contract which defines the way the government must deal with bids in the process of selecting a contractor * * *." *Id.* 713 F.2d at 730. The Federal Circuit stated: " 'The Act [CDA] deals with contractors, not with disappointed bidders * * *.' " *Id.* (citing *United States v. John C. Grimberg,* 702 F.2d 1362, 1368 (Fed.Cir.1983)). At the time plaintiff submitted its December 15, 1982, letter he was a bidder and not a contractor. Therefore, the letter cannot be considered a claim under the CDA. Though the facts in this case are distinguishable from those in *Coastal Corp.,* the court's opinion in that case supports this conclusion regarding plaintiff's December 15, 1982, letter. A common sense view of a letter submitted before a contract is awarded also supports the reasonableness of the court's conclusion that such a letter cannot be considered a claim upon which the contracting officer could have based his decision in this case. If that letter had been submitted to the contracting officer after the award of the contract, it might merit

consideration as a proper claim under the CDA.[2]

■ Having decided that there was no claim upon which the contracting officer could have based his decision,[3] the contracting officer was without authority to render his "final decision" and this court is without jurisdiction to hear plaintiff's claim.

Without jurisdiction the court need not express an ultimate opinion on the merits of plaintiff's claim though it notes that there seems to be arguably some merit to plaintiff's assertions. The court finds unpersuasive plaintiff's argument that defendant is bound by plaintiff's pre-award interpretation of the specifications based on the rule that "[i]f one party to a contract knows the meaning that the other intended to convey by his words, then he is bound by the meaning." *Cresswell v. United States*, 146 Ct.Cl. 119, 127, 173 F.Supp. 805, 811 (1959). In this case the fact that plaintiff was aware of defendant's interpretation, as well as defendant being aware of plaintiff's reading of the specifications, would appear to limit the applicability of that rule in this case. The court also finds unpersuasive plaintiff's reformation argument based on a mistake in bid. Prior to the award of the contract, the contracting officer informed plaintiff of his perceived proper reading of the specification in his December 3, 1982, letter. After such notice plaintiff had an opportunity to change his bid but felt it was not necessary to do so under his interpretation of the contract. To consider plaintiff's bid to have been mistaken under the circumstances of this case appears to misapply the mistake in bid theory and thus reformation would probably not be warranted.

However, the court did find some merit in plaintiff's argument regarding *contra*

*proferentem.* The general rule is that a contractor's interpretation of an ambiguity prevails over that of the government if the contractor's interpretation is reasonable. *See BCM Corp. v. United States,* 2 Cl.Ct. 602, 607 (1983); *WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 6–7, 323 F.2d 874, 876–77 (1963) (as cited in *Blount Bros. Constr. Co. v. United States,* 171 Ct.Cl. 478, 495–96, 346 F.2d 962, 975 (1965)). However, if the ambiguity is plain or patent the contractor has the burden of bringing the ambiguity to the attention of the government. If the contractor, while bidding, does not do so, it cannot rely on the principle of *contra proferentem.* See *Iconco v. United States,* 6 Cl.Ct. 149, 154–56 (1984); *S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 128–30, 546 F.2d 367, 369–70 (1976); *Beacon Constr. Co. v. United States,* 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 503–04 (1963). In this case, however, unlike the plaintiffs in *Iconco, S.O.G. Arkansas,* and *Beacon Constr. Co.,* the plaintiff did inform the government of its reading of the specifications intending "to bridge the cravasse in his own favor." *Beacon Constr. Co. v. United States, supra,* 161 Ct.Cl. at 7, 314 F.2d at 504. The court suggests, at this time, that such notice (December 15, 1982, letter) from plaintiff regarding the potentially ambiguous specifications placed the onus upon defendant to clarify the ambiguity before awarding the contract to prevent the principle of *contra proferentem* from controlling in this case. Defendant's failure to so act certainly casts a pall over its argument that *contra proferentem* is inapplicable under the circumstances of this case.

If *contra proferentem* was applied in this case, the contracting officer's letter dated April 14, 1983, would constitute a

---

**2.** The court expresses no opinion regarding whether plaintiff's December 15, 1982, letter, if submitted at the proper time, would possess the requisite elements of a claim as set out in *Hoffman Constr. Co. v. United States,* 7 Cl.Ct. 518, 524–27 (1985).

**3.** The contracting officer issued his decision after learning from plaintiff's concrete supplier that plaintiff did not intend to utilize all borated

concrete. A contracting officer cannot generate a final decision on his own motion, *i.e.,* without a submitted claim. *Conoc Constr. Corp. v. United States,* 3 Cl.Ct. 146, 148 (1983); *Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982); *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981).

constructive change to the contract which would entitle plaintiff to an equitable adjustment to compensate him for the additional costs incurred. It may well be that both sides were playing their cards close to their chests. One could easily place the burden of risk on the government under the undisputed facts in this case since it had the obligation to clarify the matter in writing upon receipt of plaintiff's December 15, 1982, letter. The contracting officer may well have had a duty to "speak up" at that time. *See Jet Forwarding, Inc. v. United States*, 194 Ct.Cl. 343, 346, 437 F.2d 987, 989 (1971). Such a failure to clarify the situation when said letter placed the ball in defendant's court might well leave defendant with liability. *See Singer-General Precision, Inc. v. United States*, 192 Ct.Cl. 435, 447–48, 427 F.2d 1187, 1193 (1970). The above discussion is offered in the hope that reasonable minds might see the light of settlement as a basis for resolution of the matter rather than face the continued process of litigation at the administrative and/or judicial levels.[4]

In any event, as the court stated above, it has no jurisdiction over plaintiff's claim. Section 609(a)(1) of the CDA allows a contractor direct access to this court after an unfavorable decision by a contracting officer. However, absent a proper claim in this case, the contracting officer lacked authority to render a decision. Without such a decision, 41 U.S.C. § 609(a)(1) is inapplicable and this court is without jurisdiction.

### III.

Based on the above discussion, the court grants defendant's motion to dismiss based on jurisdictional grounds, and denies both plaintiff's motion and defendant's cross-motion for summary judgment on the merits, without prejudice, with plaintiff's complaint to be dismissed.

**4.** The court notes that plaintiff is not precluded from requesting a decision from a contracting officer regarding the specification dispute at this time. The court also notes that the contracting officer in his December 3, 1982, letter to plaintiff recognized that plaintiff may have made a mistake in bid of $13,102.80. Plaintiff is requesting a judgment of $17,039.08 in this court. In this context, the seeds of settlement need only be germinated by the reasonable professionalism of the parties.