**GARDNER MACHINERY
CORPORATION**

**v.**

**The UNITED STATES.**

No. 54–87C.

United States Claims Court.

Feb. 9, 1988.

William M. Claytor, Charlotte, N.C., for plaintiff.

Richard P. Nockett, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.  Anna C. Maddan, Veterans Admin., of counsel.

## OPINION

YOCK, Judge.

This contract case is currently before the Court on defendant's motion to dismiss for lack of jurisdiction. For the reasons discussed herein, the defendant's motion is granted and the plaintiff's complaint is to be dismissed without prejudice.

### Facts

On March 31, 1983, Gardner Machinery Corporation, Inc. (Gardner), the plaintiff in this action, was awarded Contract No. V797P–6852 which required the plaintiff to design, manufacture, and install a laundry system at the Veterans Administration (VA) Hospital located in Hines, Illinois. On June 15, 1983, the contract was terminated by the contracting officer for the convenience of the Government. By letter dated December 21, 1983, the plaintiff submitted a settlement proposal to the contracting officer. The letter stated:

I am enclosing the executed original form and one copy which you sent me to compete [sic] in support of our Termination Proposal dated December 21, 1983.

In accordance to the above termination of contract # V797P–6852, we have complied with the terms of the termination and herewith submit our settlement proposal as follows:

|  |  |
|---|---|
| General and Administrative Expenses including Termination Expenses | $20,871.12 |
| Architectural & Engineering Expenses | 70,208.01 |
| Cancellation Charges by Suppliers G.A. Braun, Inc. Items 1, 2, 15, 17, 18, 19 & 20 | 97,450.00 |
| Thermal Engineering Item 29 | 9,630.00 |
| Gardner Machinery Suppliers Items 7, 8, 9, 12, 13, 14, 16, 21, 22, 23 & 28 | 16,870.00 |
| TOTAL | $215,029.13 |

I have examined the claims of the subcontractors and certify that they are allocable to the terminated portion of the prime contract and that the settlement is fair and reasonable, was negotiated in good faith, and is not more favorable to the subcontractor than if the Government were not involved.

Following the receipt of the plaintiff's settlement proposal, the contracting officer sent an audit request to the VA Inspector General's Office on January 5, 1984. The contracting officer's audit request, in turn, was forwarded by the VA's Inspector General to the Defense Contract Audit Agency (DCAA) on February 23, 1984. The DCAA thereafter requested that the plaintiff's settlement proposal he submitted on the appropriate "total cost basis" forms which were provided. On April 12, 1984, the plaintiff resubmitted its settlement proposal to the contracting officer on Government Standard Form 1436. The plaintiff's cover letter stated (in pertinent part):

I am enclosing the executed original form and one copy which you sent me to compete [sic] in support of our Termination Proposal dated December 21, 1983.

If you need any further information, please call me.

On Government Standard Form 1436, under "Section II—Proposed Settlement" and the column entitled "Total Proposed to Date," the plaintiff, on the "net payment requested" line, had written the amount of $215,029.13. The certification of the proposal stated:

This is to certify that the undersigned, individually, and as an authorized representative of the Contractor, has examined this termination settlement proposal and that, to the best knowledge and belief of the undersigned:

(a) AS TO THE CONTRACTOR'S OWN CHARGES. The proposed settlement (*exclusive of charges set forth in Item 14*) and supporting schedules and explanations have been prepared from the books of account and records of the Contractor in accordance with recognized commercial accounting practices; they include only those charges allocable to the terminated portion of this contract; they have been prepared with knowledge that they will, or may, be used directly or indirectly as the basis of settlement of a

termination settlement proposal or claim against an agency of the United States; and the charges as stated are fair and reasonable.

(b) AS TO THE SUBCONTRACTORS' CHARGES. (1) The Contractor has examined, or caused to be examined, to an extent it considered adequate in the circumstances, the termination settlement proposals of its immediate subcontractors (*exclusive of proposals filed against these immediate subcontractors by their subcontractors*); (2) The settlements on account of immediate subcontractors' own charges are fair and reasonable, the charges are allocable to the terminated portion of this contract, and the settlements were negotiated in good faith and are not more favorable to its immediate subcontractors than those that the Contractor would make if reimbursement by the Government were not involved; (3) The Contractor has received from all its immediate subcontractors appropriate certificates with respect to their termination settlement proposals, which certificates are substantially in the form of this certificate; and (4) the Contractor has no information leading it to doubt (i) the reasonableness of the settlements with more remote subcontractors or (ii) that the charges for them are allocable to this contract. Upon receipt by the Contractor of amounts covering settlements with its immediate subcontractors, the Contractor will pay or credit them promptly with the amounts so received; to the extent that it has not previously done so. The term "subcontractors," as used above, includes suppliers.

NOTE: The Contractor shall, under conditions stated in FAR 15.804–2, be required to submit a Certificate of Current Cost or Pricing Data (see FAR 15.804–2(a) and 15.804–6). [Emphasis in original.]

Immediately following the certification was the signature of the plaintiff's president.

On April 29, 1985, the contracting officer sent the completed DCAA audit to the plaintiff, requesting his comments. He specifically called attention to "the questionable amout [sic] of $195,573 of your claim," and suggested that a negotiation date would be established after the receipt of the plaintiff's comments. On October 15, 1985, the contracting officer again wrote to the plaintiff requesting information as to when he may expect a reply to the audit report.

Sometime thereafter, the parties entered into negotiations and were able to agree on a partial settlement of the plaintiff's cost proposals. By letter dated June 24, 1986, the contracting officer wrote to the plaintiff's attorney and stated (in pertinent part):

This is to confirm that a request for funds in the amount of $107,080.00 was submitted to our VA Central Office, Washington, DC on June 5, 1986. This is for a partial payment to be made for subcontractor's costs, against your claim 4PE–A19–022.

On August 15, 1986, the plaintiff's attorney wrote to the contracting officer, acknowledging receipt of the partial payment and seeking to reopen negotiations as to the remaining portion of the plaintiff's claim. The letter stated (in pertinent part):

This is to acknowledge, on behalf of Gardner Machinery Corporation, the receipt on August 8, 1986 of the sum of $107,080.00 from the Fiscal Division, which sum represents a partial payment for sub-contractors' costs claimed by Gardner Machinery Corporation for the VA's termination of contract V797P–6852.

We want to express to you and Ms. Madden, Ed Brooks and your staff our client's appreciation for the issuance of said check and for your cooperation in satisfactorily resolving a part of our client's claim.

The secondary purpose of this letter is to reopen discussion of the unresolved portion of Gardner's claim. Gardner's claim as originally submitted totalled $215,029.00. For purposes of attempting to resolve this dispute, Gardner offered, on February 7, 1986, to reduce its claimed amount to $180,788.33.

Our client is willing, at this time, to renew its offer to resolve the entire dispute on the basis of $180,788.00, plus accrued interest. Deducting the partial payment received to date, this would leave a balance due of $73,708.00, plus accrued interest (i.e. interest on $180,788.00 from December 23, 1983 through August 8, 1986, and interest on $73,708.00 from August 8, 1986 until such date as payment is received in full).

There are several sound and justifiable reasons for reopening this proposal and resolving the dispute in full.

\* \* \* \* \* \*

4. If the dispute remains unresolved, Gardner's only remedy then available is to seek a satisfactory resolution through litigation in the United States Court of Claims. Such an action would have to be based on Gardner's claim, as originally submitted, plus accrued interest, plus costs, plus fees and expenses. Such action would necessitate further costs, expenses and a large block of administrative time for both parties devoted to litigation. The case would not be heard for over a year and interest would, of course, continue to run. From a most logical standpoint, it does not seem to me to be the best interest of either side to proceed in this matter.

\* \* \* \* \* \*

I would ask that you consider or reconsider my comments and requests as stated herein. If you feel that another conference would be beneficial, we will be happy to meet with you in order to work toward a satisfactory resolution.

Thereafter, the parties were unable to reach any further agreement on the plaintiff's settlement proposal. No unilateral termination letter has apparently been issued by the contracting officer to this effect to date.

On February 2, 1987, the plaintiff filed a direct access suit in this Court, under the authority of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et. seq.* (1982). In its complaint filed in this Court, the plaintiff seeks to recover unreimbursed costs and profits stemming from the Govern-

ment's termination of the contract for its own convenience. In addition, the plaintiff seeks appropriate interest from the date the contracting officer allegedly received its claim (December 23, 1983).

On May 4, 1987, the defendant filed its motion to dismiss for lack of jurisdiction. This motion is now ripe for decision.

## *Discussion*

Once again, this Court is confronted with a motion by the Government to dismiss a direct access contract claim in this Court because the purported "claim" or submission to the contracting officer is alleged to be deficient in various essential respects. *See, e.g., Technassociates, Inc. v. United States,* 14 Cl.Ct. 200 (1988); *Aeronetics Division, AAR Brooks & Perkins Corp. v. United States,* 12 Cl.Ct. 132 (1987); *Hoffman Construction Co. v. United States,* 7 Cl.Ct. 518 (1985). In this case, the Government contends that the plaintiff has failed to submit a "claim" to the contracting officer within the meaning of the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et. seq.* (1982) (CDA). It further contends that even if this Court were to hold, under the facts, that a "claim" has been submitted to the contracting officer, the "claim" itself has not been certified as required by the CDA. Thus, the Government concludes that under the authority of the CDA a direct access suit in the Claims Court is precluded. For this proposition, the Government cites to *W.M. Schlosser Co. v. United States,* 705 F.2d 1336 (Fed.Cir. 1983); *Hoffman Construction Co. v. United States, supra;* and *T.J.D. Services, Inc. v. United States,* 6 Cl.Ct. 257 (1984), among other cases.

The plaintiff counters the Government's motion by arguing that it has indeed filed a duly certified claim with the contracting officer as contemplated by the CDA. It points out that following the Government's convenience termination of its contract on June 16, 1983, it submitted its settlement proposal letter to the contracting officer on December 21, 1983, as called for under the contract's termination for convenience

clause. When the Government thereafter requested that the plaintiff put its settlement proposal on the appropriate settlement proposal forms consistent with the appropriate regulations, it also complied with that request by cover letter dated April 12, 1984. The plaintiff's settlement proposal, which was submitted on Standard Form 1436, also included an appropriate certification. Therefore, the plaintiff concludes, the April 12, 1984 settlement proposal submission, read in conjunction with its December 21, 1983 submission, constitutes the duly certified claim as contemplated by the CDA.[1]

The CDA requires that, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1982). In addition, it requires that for claims in excess of $50,000, "the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable." 41 U.S.C. § 605(c)(1) (1982). The contractor's claim submission and certification requirements enunciated by the CDA are mandatory and are jurisdictional prerequisites before a contractor can file a direct access suit in this Court. *W.M. Schlosser Co. v. United States, supra,* 705 F.2d at 1338–39; *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). *See T.J.D. Services, Inc. v. United States, supra,* 6 Cl.Ct. at 260.

With the above authorities in mind, the two questions for decision on the Government's motion are: first, did the plaintiff submit a claim to the contracting officer for final decision as contemplated by the CDA; and second, even if a claim was submitted, was the claim properly certified? If either of these questions is answered in the negative, this Court lacks the necessary jurisdiction to hear the plaintiff's direct access appeal herein.

■ In order to determine the sufficiency of a purported claim which would trigger the appeal mechanism of the CDA, the particular facts must be evaluated on a case-by-case basis. *See Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 192, 645 F.2d 966, 976 (1981), *later proceeding,* 230 Ct.Cl. 884 (1982). Therefore, to answer the first of the two questions, the Court must look especially hard at the plaintiff's letter of April 12, 1984 with the attached Settlement Proposal (Standard Form 1436).

To begin with, one must examine the purpose for which the plaintiff's April 12, 1984 settlement proposal was submitted to the contracting officer in order to determine whether the submission was a "claim" submitted for final decision to the contracting officer as contemplated by the CDA. It is clear that the plaintiff sent its initial letter dated December 21, 1983, to the contracting officer to comply with the requirements of the termination for convenience clause contained in the contract. That clause, which was incorporated by reference into the contract, stated in pertinent part:

> (a) The performance of work under this contract may be terminated by the Government in accordance with this clause in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interest of the Government.
> * * *
>
> *   *   *   *   *   *
>
> (c) After receipt of a Notice of Termination, the Contractor shall submit to the

---

1. The plaintiff also argues in the alternative that even if it has failed to file a duly certified claim with the contracting officer, the Government should be estopped from asserting the lack of jurisdiction in this Court since the plaintiff complied exactly with the contracting officer's directives as to its submissions. The plaintiff's estoppel argument is to no avail, however, since jurisdictional prerequisites established by statute may never be waived by either party. *See W.H. Mosely Co. v. United States,* 230 Ct.Cl. 405, 406, 677 F.2d 850, 851, *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982); *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982); *T.J.D. Services, Inc. v. United States,* 6 Cl.Ct. 257, 263 (1984).

Contracting Officer his termination claim, in the form and with certification prescribed by the Contracting Officer. Such claims shall be submitted promptly but in no event later than one year from the effective date of termination * * *.

(d) Subject to the provisions of paragraph (c), and subject to any review required by the contracting agency's procedures in effect as of the date of execution of this contract, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount or amounts to be paid to the Contractor by reason of the total or partial termination of work pursuant to this clause * * *.

(e) In the event of the failure of the Contractor and the Contracting Officer to agree as provided in paragraph (d) upon the whole amount to be paid to the Contractor by reason of the termination of work pursuant to this clause, the Contracting Officer shall, subject to any review required by the contracting agency's procedures in effect as of the date of execution of this contract, determine, on the basis of information available to him, the amount, if any, due to the Contractor by reason of the termination and shall pay to the Contractor the amounts determined as follows:

*   *   *   *   *   *

(g) The Contractor shall have the right to appeal, under the clause of this contract entitled "Disputes" from any determination made by the Contracting Officer under paragraph (c) or (e) above * * *.

41 C.F.R. § 1–8.701 (July 1, 1982). It is also clear that once the contracting officer received the plaintiff's December 21, 1983 settlement proposal letter, he requested an audit from the DCAA, and in turn requested that the plaintiff resubmit his settlement proposal on the appropriate total cost basis standard form, citing part 1–8 of the Federal Procurement Regulations. 41 C.F. R. § 1–8 (1982) (now contained in the Federal Acquisition Regulations, 48 C.F.R. § 49 (1986)). Subpart 1–8.203 of title 41 of the Federal Procurement Regulation deals with the methods of settlement to be used

by the contracting officer when a contract has been terminated for convenience. That section states in pertinent part:

Settlement of cost-reimbursement type contracts and of fixed-price type contracts terminated for convenience may be effected by: (a) Negotiated agreement, (b) determination by the contracting officer, * * * (d) a combination of these methods. Every effort shall be made to reach a fair and prompt settlement with the contractor. The negotiated agreement is the most expeditious and most satisfactory method of settling termination claims and shall be used whenever feasible. Settlement by determination shall be used only when a termination claim cannot be settled by agreement.

Following the contracting officer's request, the plaintiff resubmitted its termination settlement proposal using Standard Form 1436 by cover letter dated April 12, 1984. After completion of the audit report, the parties engaged in negotiations, and on or about June 5, 1986, the parties agreed that the plaintiff would be granted some $107,080 in partial payment on its termination proposal of some $215,029. On August 15, 1986, the plaintiff's attorney wrote to the contracting officer acknowledging receipt of the partial payment and seeking to reopen negotiations as to the remaining portion of the plaintiff's termination proposal/claim. The letter offered to reduce the amount still sought to some $74,000 plus interest. Thereafter, the parties were unable to reach any further agreement, and on February 2, 1987, the plaintiff filed its direct access suit in this Court.

Although it is clear that the plaintiff had some type of a "claim" when it submitted its April 12, 1984 settlement proposal to the contracting officer, the real question to be answered at this point is whether the settlement proposal/termination claim was in fact a "claim" as contemplated under section 605(a) of the CDA. The CDA, of course, does not define the term. Nevertheless, the contract did contain (incorporated by reference) a disputes clause which defined a claim as:

(c)(i) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract.

(ii) *A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act.* However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim pursuant to the Act.

(iii) A claim by the contractor shall be made in writing and submitted to the contracting officer for decision. A claim by the Government against the contractor shall be subject to a decision by the Contracting Officer. [Emphasis supplied.]

45 Fed.Reg. 35817 (May 28, 1980). Although this definition is helpful to the Court, even more helpful is the definition contained in the current acquisition regulations which defined a claim as follows (in pertinent part):

"Claim," as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. *However, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act and 33.207. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33,206(a), if it is disputed either as to liability or*

*amount or is not acted upon in a reasonable time.* [Emphasis supplied.]

48 C.F.R. § 33.201 (1986). In addition, the following definition of "settlement proposal" is worthy of note:

"Settlement proposal," as used in this part, means a proposal for effecting settlement of a contract terminated in whole or in part, submitted by a contractor or subcontractor in the form, and supported by the data, required by this part. A settlement proposal is included within the generic meaning of the word "claim" under false claims acts (see 18 U.S.C. 287 and 31 U.S.C. 3729).

48 C.F.R. § 49.001 (1986).

In view of the above described facts and authorities, this Court concludes that the settlement proposal/termination claim that the plaintiff submitted by cover letter dated April 12, 1984 on Standard Form 1436 was not a written claim submitted to the contracting officer for final decision as contemplated by the CDA.

The plaintiff's April 12, 1984 submission to the contracting officer was submitted for the purpose of negotiating a settlement agreement. It was not submitted for the purpose of making a final demand for a finite amount from the contracting officer. Nor did it request a final decision from the contracting officer. This is evident by reading the plaintiff's own language in the April 12, 1984 cover letter and the December 21, 1983 letter/submission which preceded it. The December 21, 1983 letter simply stated that, "[i]n accordance to the above termination of contract # V797P–6852, we have complied with the terms of the termination and *herewith submit our settlement proposal* as follows" (emphasis supplied), and thereafter listed the various costs it believed itself entitled to, followed by a certification. Likewise, the plaintiff's April 12, 1984 cover letter stated even more simply:

I am enclosing the executed original form and one copy which you sent me to compete [sic] *in support of our Termination Proposal dated December 21, 1983.*

If you need any further information, please call me. [Emphasis supplied.]

The CDA and the Disputes Clause of this contract, of course, require that a claim, meaning a written demand, be submitted to the contracting officer for a final decision. Nowhere in these submissions can one find the requisite demand for that finite amount nor the request for a final decision.

In *Hoffman Construction Co. v. United States,* 7 Cl.Ct. 518 (1985), this Court found those omissions to be a significant factor against finding that the claim had been sufficiently stated. In *Hoffman,* the contractor submitted a cover letter and table detailing certain cost items. There, the Court held that the contractor had not submitted a "claim." Rather the letter and table expressed a "willingness to reach an agreement as opposed to a demand that the contracting officer reach a final decision * * *." *Hoffman, supra,* 7 Cl.Ct. at 525. The same is true in the present case. The plaintiff's submissions on December 21, 1983 and again on April 12, 1984 were submitted for the purpose of opening negotiations and not for the purpose of settling a matter in dispute. The April 12, 1984 submission falls far short of a written demand by the contractor for a final decision by the contracting officer. *See Technassociates v. United States, supra; Hoffman v. United States, supra. See also ReCon Paving, Inc. v. United States,* 745 F.2d 34 (Fed.Cir.1984); *Straga v. United States,* 8 Cl.Ct. 61 (1985). *Accord J.M.T. Machine Co.,* 86–1 B.C.A. ¶ 18,684, *aff'd,* 826 F.2d 1042 (Fed.Cir.1987).

In addition to the above, the Disputes Clause, incorporated into this contract, and the Federal Acquisition Regulations make it fairly clear that settlement proposals, such as the Court is dealing with in this case, will generally not be considered to be claims within the contemplation of the CDA. A settlement proposal is defined in 48 C.F.R. § 33.201 (1986) to mean "a proposal for effecting settlement of a contract terminated in whole or in part * * *." In addition, 48 C.F.R. § 33.201 (1986), states that:

[h]owever, a written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act and 33.207. A voucher, invoice, *or other routine request for payment that is not in dispute when submitted is not a claim.* The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.-206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time. [Emphasis supplied.]

This leads to the inevitable conclusion that a settlement proposal is contemplated under the regulations as a request for opening negotiations. It is not contemplated by the regulations that settlement proposals be used for the submission of final demand, final decision requested CDA claims. That is not to say that CDA claims may not grow out of the settlement proposal process or be converted to a CDA claim. It simply means that at the point of impasse in the negotiation process, the contractor must submit or resubmit its written claim, now in dispute for a finite amount of money, to the contracting officer and request a final decision thereon.

■ In the matter at issue, it is clear that the parties to the contract reached an impasse in their termination proposal negotiations sometime after the plaintiff submitted its letter of August 15, 1986 to the contracting officer and prior to bringing its direct access suit in this Court on February 2, 1987. It was at that point of impasse when the plaintiff should have submitted (or resubmitted) his written claim, now in legitimate dispute, labeled as a final demand and requested a final decision under the authority of the CDA. Since the claim was still for more than $50,000 it also should have been duly certified, using the certification language spelled out in the CDA and the Disputes Clause of the contract. In any event, since this Court finds that the plaintiff has not submitted a written claim to the contracting officer as contemplated by the CDA, the Court is without jurisdiction to hear the plaintiff's direct

access claim and must therefore dismiss the plaintiff's complaint without prejudice.

▮ Even if the plaintiff's April 12, 1984 cover letter and settlement proposal were held to be a sufficient claim, however, the plaintiff would still have a certification problem to overcome. The CDA requires that claims in excess of $50,000 must be certified by the contractor. The certification mandate is:

> one of the most significant provisions of the CDA. The importance Congress ascribed to the certification requirement as a mechanism to discourage the submission of unwarranted claims and encourage prompt settlements was fully discussed in *Lehman v. United States,* [230 Ct.Cl. 11], 673 F.2d 352 (1982) and need not be repeated here. Suffice to say that certification is not a mere technicality to be disregarded at the whim of the contractor, but is an unequivocal prerequisite for a post-CDA claim being considered under the statute."

*Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1384 (Fed.Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed. 2d 103 (1983).

Section 605(c)(1) of title 41 of the United States Code reads:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

In the present case, the certification language submitted by the plaintiff is found on the last page of the Standard Form 1436—Settlement Proposal, and is quoted in the factual portion of this opinion.

The contractor's certification must clearly and unequivocally comply with the statute. Also, the certification must *simultaneously* state all three elements required by section 605(c)(1). *W.H. Moseley Co. v. United States, supra; Aeronetics Division, AAR Brooks & Perkins Corp. v. United States,* 12 Cl.Ct. 132, 135 (1987);

*Palmer & Sicard, Inc. v. United States,* 4 Cl.Ct. 420, 424 (1984). The plaintiff's alleged certification in this case does not contain *any* of the three required elements. It does not state that the claim is made in good faith. It does not state that the data are accurate and complete to the best of the contractor's knowledge. Nor does it state that it accurately reflects the contract adjustment for which the contractor believes the Government to be liable.

Since the plaintiff has failed to submit a disputed and certified claim to the contracting officer, this Court lacks the jurisdiction to hear the plaintiff's direct access appeal. The plaintiff must submit a disputed and properly certified claim to the contracting officer, pursuant to the mandates of the CDA, before the Court can acquire direct access jurisdiction. *T.J.D. Services, Inc. v. United States, supra,* 6 Cl.Ct. at 263.

When a contractor's claim is dismissed without prejudice for lack of jurisdiction, the proper course of action is: (1) prepare its written claim, now in legitimate dispute, labeled as a final demand and requesting a final decision under the authority of the CDA; (2) properly certify the claim; (3) resubmit the certified claim to the contracting officer; (4) if there is then an adverse decision issued by the contracting officer, appeal either to the appropriate board or directly to this Court. *See Skelly and Loy v. United States,* 231 Ct.Cl. 370, 377, 685 F.2d 414, 419 (1982); *T.J.D. Services Inc. v. United States, supra,* 6 Cl.Ct. at 263.

## CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss for lack of jurisdiction is granted. The plaintiff's complaint is to be dismissed without prejudice.

Each party shall bear its own costs.